Kent, Oh. J.
delivered the opinion of the court. Several objections are taken to the validity of the declaration. We shall, however, confine ourselves to the first and only important one, viz.: that here was no implied covenant of title. It is exceedingly interesting to the community that this question should be clearly settled, and well understood. We are to examine,
1. Whether a sale of an estate in fee, by the formal and apt words of conveyance, and for a valuable consideration, does of itself imply a warranty or covenant of title. The counsel for the plaintiff contended upon the argument that it did.
2. If it does not, then whether there be any particular word or words in the deed, that by settled construction, have been deemed to amount to such covenant or warranty.
1. It seems upon the first impression to be highly reason .able and just that every person, who, for a valuable con-Bideration, conveys land as bis own, should be held to warrant the title he so undertakes to convey, or that he should render back the *money upon failure of the title. This was the rule of the civil law in respect to the sale of both- real and personal property, concerning which that system scarcely made a distinction, an adequate price implying a warranty. Cod. lib. 8, tit. 45, c. 6; Dig. lib. 19, tit. 1, c. 11, s. 2; Lib. 21, tit. 2; 1 Domat, 79, 82, 83 ; 1 Ersk. Inst. 203. In the early ages of the feudal law, it seems also to have been considered as an obligation upon the lord to give his tenant an equivalent in case of eviction. This appears clearly from the book of feuds, which gives the report of a cáse of an action by the tenant against the lord, for investing him with a feud belonging to another, and from which he was evicted. The lord was there held to restore him another fee of equal value, or the price of it in money. Feud. lib. 2, tit. 85, and 80. But, although the feudal writers speak generally of the lord’s obligation to give the tenant an equivalent in case of eviction, Craig, and after him Sir Martin Wright, thinks this obligation never could havé applied to pure feuds which were gratuitous donations for uncertain military services, without price or stipulated render; and that it could only have applied to improper feuds, where it was reasonable it should apply, as in those cases a price was given, or an equivalent contracted for. Inst, to the Law of Tenures, 27, 32, 39, 40. This very question, whether investiture alone, without any express promise, entitled the tenant on eviction to an equivalent, has, it is said, been much discussed by the foreign Civilians; that it is the prevailing opinion among them, that the seller, without any promise, is bound to give an equivalent, if the fief was originally granted for services done, or in the way of remuneration. Butler’s note 315, to Co. Litt.
But whatever may be our opinions on the point, as an abstract question, or whatever may be the decisions of the *191 civil law, or the feudal and municipal law of other countries, we must decide this question by the common, law of England. It was decided in the case of Seixas and Wood, (Ante, 48,) that, upon a sale of goods without warranty and without deceit, the purchaser took the soundness and quality of them at his peril. We think it is evident that caveat emptor has been always recognized in our law books as a fixed maxim, applicable equally to the transfer of lands and chattels.
It is a settled position that an estate in fee may be created by the usual and solemn forms of convey-anee, without any '^warranty express or implied, and that a conveyance in fee does not ipso facia imply a warranty. If it does, our books would be inconsistent and unintelligible on this subject. “If a man,” says Lord Coke, (1 Inst. 6a, and also say the judges in Buchhurst's case, 1 Co. 1,) “ maketh a feoffment in fee, without warranty, the purchaser is entitled to all the charters and evidences incident to the lands, to the end that he may defend himself; for, as the feoffor is not bound to warrant the lands, he cannot be vouched to warranty and to render in value, but the feoffee is to defend the lands at his peril.” In the case of Boswell and Vaughan, (2 Cro. 196,) in the exchequer, Tanfield, the chief baron, said, “ that if one should sell lands wherein another is in possession, or a horse whereof another is possessed, without covenant or warranty for the enjoyment, it is at the peril of him who buys, and not reason he should have an action by the law, where he did not provide for himself.” So, in the case of Medina and Stoughton, (1 Salk. 211,) Lord Holt observed, “ that if the seller of goods have not the possession, it be-hoves the purchaser to take care, caveat emptor, to hare an express warranty, or a good title; and so it is in the case of land, whether the seller be in or out of possession, for the seller cannot have them without a title, and the buyer is at his peril to see it.” In a much more recent case of Bree and Holbech, (Doug. 654,) the action was brought *192 to recover back money paid for the purchase of a mortgage deed, which afterwards turned out to be a forgery. Lord Mansfield, and the court of king’s bench, ruled for the defendant on this ground, that the assignment contained no covenant for the goodness of the title, except only against the acts of the assignor, and that it was incumbent on the purchaser to look to the goodness of it. This case was afterwards cited and sanctioned by Lord •Kenyon, (6 D. & E. 606,) who said that he did not wish to disturb the rule of caveat em/ptor adopted in that case, and in other cases, where a regular conveyance was made, to which other covenants were not to be added.
The case in Douglas may perhaps be thought to have the less weight as there was a covenant against the grantor’s own acts, and it is a rule that an express covenant will do away the effect of all implied ones. 4 Co. 80, 86; Vaugh. 126; Cro. Eliz. 674, 675; Butler’s notes on Co. Litt. 832; 2 Bos. & Pull. 26 ; 2 Cha. Cas. 19. But the court do not intimate that *they proceeded upon that ground. This they would have done had they relied upon the extinguishment of the implied covenant by means of the express one. They adopted the old rule, that if there'be no covenant of title in a deed, the purchaser takes, at his own risk, the goodness of the title.
After this rule has been so long understood and practised upon, it would be of the most mischievous consequence to establish a contrary doctrine. The parties to deeds know that a covenant is requisite to hold the seller to warrant the title, and they regulate their contracts accordingly. If there be any fraud in the sale the purchaser has his remedy. If one sell land, affirming he had a good title, when he knew he had no title, an action on the case for a deceit will lie. Com. Dig. tit. Action on the Case for a Deceit, A. 8. 1 Fonb. 366.
2. We are next to examine whether there be any particular words in the granting clause of the deed which im ply a covenant.
*193 Grlanville, lib. 7, c. 2, says, generally, that the beirs of donors are beld to warrant their gifts, “ donationss ;” and Braclon, lib. 5, fol. 388, b. 389, a, says to tbe same effect, that “ warranty belongs to all charters of simple donation, and that the donors and their heirs were held to warranty unless the deed expressed the contrary.- But a charter of' confirmation did not include a warranty, unless it contained a gift, and if the grantor say, do et confirmo, or the charter uses the words dare, vendere, &c. such a deed contained a warranty. So if homage was imposed, a warranty was implied.” It is a little singular that the old writers make the gift (donatio) the reason and ground of the warranty. It is the gift by the operative words do or dedi that creates the warranty. Accordingly, Lord Coke, 2 Inst. 276, says, that although dedi and concessi be coupled together, as in the statute de bigamis, yet these words rations donigorogori do appropriate the warranty to dedi only.
It is our duty to acquiesce in the law as we find it, but we are very naturally tempted to agree with Sir M. Wright, that warranty, instead of being attached to a fee, which was a pure gift, ought more justly to have accompanied a fee, which was created for a valuable consideration.
The statute de bigamis, 4 Edw. 1, c. 6, is very material to ascertain the ancient law on the subject, since it was only declaratory of the common law. 2 Inst. 274. It says “ that *in deeds wherein is contained dedi and concessi without homage, or without a clause of warranty, and to be holden of the givers and their heirs, by certain services, it is agreed that the givers and their heirs shall be bound to warranty. And where is contained dedi and concessi, &c. to be holden of the chief lord of the fee, and not of the feoffors or their heirs, reserving no services without homage, or without the aforesaid clause, their hoirs shall not be bound to warranty, notwithstanding the feoffor during his own life by force of his own gift shall be bound to warrant.”
By this statute, then, dedi is declared to amount to a *194 Warranty for the life of the feoffor; 4 Oo. 81, a, and this is the word that Coke considers, (2 Inst. 275, b,) as the real operative word to create a warranty in law, and it hath this effect whether the conveyance in which it is found operate as a feoffment, release, or confirmation.
The statute of quia emptores, 18 Edw. 1, which followed soon after, prohibited all subinfeudations, and put an end to homage, which was, in those days, parcel of the tenure reserved to the feoffor, by declaring that it should be lawful for every freeman to sell his own lands, and that the feoffee should hold the lands of the chief lord of the fee by the same services that the feoffor was bound to before. This statute accordingly changed, in a great degree, the operation of the word dedi, by confining the implied covenant it contained to the life of the feoffor, according to the directions of the statute de bigamis, except in cases of gifts in tail and leases for life. 2 Inst. 275. Since that time it has been well understood and declared through all the books, that the word dedi, in a deed in fee, amounted to a warranty in law to the feoffee and his heirs only during the life of the feoffer. Co. Litt. 334, a; Touch. 180, 182; F. N. B. 134, H; 2 Bl. Com. 300.
This word do or dedi, which is the apt word of feoffment, as that conveyance was anciently called a donatio, is not, however, the word used in the deed before us. The only word, in the present case, that can be considered as implying a covenant, is grant; (concedo ;) Co. Litt. 9, a, b, and that word is carefully to be distinguished from the other; for it is well settled that concessi, in a feoffment, or estate of inheritance, implieth no warranty. It only creates a covenant in a lease for years. Co. Litt. 384. a; Bac. Abr. tit, Covenant, B; 5 Co. 17, a; 2 Roll. Rep. 399; Palm. 388; Carth. 98; Pincombe and Rudge, Hob. 3; Yelv. 139; Cro. Eliz. 674. Sir Geoffry Palmer’s opinion, Butler’s *note 332, and 2 Col. Jur. 437; 3 Keb. 188, 617. Brown v. Haywood, Hoy, 131; Saunders' on Uses, 406, 407, note.
*195 We are not able to assign a very solid reason for this distinction between the force and effect of the words “give," and “ grant." It arose from artificial reasons derived from the feudal law. The distinction is now become merely technical, but it is sufficient that it clearly exists, and we are certainly not at liberty to confound the words, or change their established operation.
The other words in the deed, “ bargain, sell, alien and confirm,” have never been considered as implying any covenant whatever in any case. The only dictum that appears to oppose the law as now laid down, is that of Lord Eldon, in the case of Browning and Wright, 2 Bos. & Pull 21. He there says that the words grant, bargain, sell, enfeoff and confirm, import a covenant in law. Wo admit and have shown that the word grant imports such a covenant in an estate for years, and so also does the word enfeoff. But in the case referred to they were used in a deed in fee; and if he means (as it would seem that he did) that they there also imported a covenant, we cannot agree to that opinion, however respectable it may be, as it is opposed to the whole stream of the book authorities. We accordingly conclude that in the present case the motion in arrest of judgment ought to be granted.