Huston, J.
This was an action of covenant brought by the plaintiffs in error, against the defendant in error, and affords a striking example of the pertinacity with which every point of law and of practice is now contested in this state. The fact that we have no Court of Chancery, and that the powers of such a court are exercised by a court and jury, is well known, and has been the subject of much remark. I do not consider it a defect in our judicial system — nay, if the power of granting injunctions, of sustaining a bill for discovery, and of directing specific performance, at the same time imposing proper terms on the other party, were granted to our courts, I would say our system is preferable to that of England, or of those states where the two courts are kept distinct. I am aware, however, that in' practice some difficulties occur; that the proper mode of proceeding remains to'be settled in some instances. The assignee of a bond, can by act of assembly support suit in his own name, where the assignment is evidenced by two witnesses. In most other cases where a right is transferred, the suit is by the assignor for use of assignee. Here we call the assignor the legal party on the record; but he is not the real party for almost any purpose. He cannot release or discontinue the action— is not liable for costs — is not the proper person on whom to serve notice to take depositions, or other notices in the', cause: in short, he is the formal, though not the real plaintiff. The.practice has been, perhaps, as was pursued in this case, to consider the death of the person for whose use suit was brought, as not a reason of continuing the cause. The legal parties being in full lifej the trial has been considered regular. ■ If, however, the defendant had objected to the trial proceeding, until the representatives of Christine were substituted, if the defendant had objected that he had no party on whom to serve notice, no party against whom he’could issue execution for costs, a judge would exercise a sound-discretion in continuing the cause until such party was put on the record. The fact is, that this and such points are not properly the subject of a *106 writ of error, and it must be a flagrant case — a great and final injury to the party, or this court would not reverse, even if they might incline to the opinion that the judge ought to have acted otherwise. By our practice, the plaintiffs might, on motion, have substituted the legal representatives of Christine instantly.
The plaintiffs, gave in evidence a deed from the defendant to Christine and Gotwalt, dated the 27th of July, 1814, (on this deed the principal question arose,) and proceeded to show title in John and Richard Penn. Richard’s part had become vested in William Penn, and having given notice to the defendant, he produced it, The plaintiffs read a deed from John and William Penn, to Jacob Strickler, and the defendant, John M. Whitehall, in fee, dated the 19th of July, 1822, and rested his cause.
The defendant then offered in evidence a warrant to James Bailey, dated the 15th of April, 1763, and return of survey thereon, under seal of office, alleging that he would deduce title under it, * and that it was a good title. The plaintiffs objected to this warrant and survey being received in evidence, because the warrant expressly grants the land, “provided it is not within our manor of Springettsbury.” If the defendant had admitted that the land lay within that manor, that neither possession nor any other fact had occurred since the date of the warrant on which he meant, to rely; in short, had admitted that the validity of that warrant must depend on whether it gave title to lands within the manor the day it issued, or the day it was returned, — the court might have been right in rejecting it; for clearly, if evidence will not avail the party, it ought not to be received: but the validity of the title under it might depend on so many occurrences since its date, that it ought to have been received as the first link in a defence, and its effect would depend on what was afterwards proved'. There was then no error in this.
After deducing title from James Bailey to tho defendant’s father, the defendant offered in evidence what he called an exemplification of the records of the Orphans’ Court of York county. The paper purports to be the record of the proceedings of the Orphans’ Court of York county, at a court held on the 15th of September, 1812. It begins by stating what had been done at a former court, and contains only that John M. Whitehill appeared and agreed to take certain lands at the appraisement, and the decree of the court assigning them to him, &e. There is no mention of a petition, much less a copy of it; no award of inquisition, nor no inquisition. The certificate is in these words: “I certify that the foregoing is a true copy taken from the original record, remaining in the office of the clerk of the Orphans’ Court of York county.” The two cases of Edmiston v. Swartz, and Voris v. Smith and Wife, in 13 Serg. Rawle, have put the admissibility of a record expressly on the certificate. I agree entirely with those opinions, but I would wish the certificates and the state of *107 the records offered had been expressly given; for an opinion is often, if not always, referrible to the case in which it is delivered. In the first case, it appears the certificate stated it to be a true copy taken from the records, and had the words, “so fully and entire as it remained in the court,” and I know the last had the same words. Our records are never made up in one roll. A narr — an execution — or inquisition is sometimes not found, when the record of an old suit is searched for, and we must take what we have. Neither of those purported to be the proceedings of the court at a single session or term. In the case before ús, we know the petition must be presented at one term or session of the court. The inquest, if then awarded, cannot be returned until the next stated Orphans’ Court, and the heirs are then notified to appear, and accept or refuse at a succeeding court — here ne have only the proceedings at this third court, and nothing from which we can suppose the previous proceedings are not all in existence; if lost, and the officer would certify what he had, and add, that this was a copy of the records of the Orphans’ Court, in that case, “so full and entire as in his office they remained,” I would receive it, and it might or might not avail the party, as though it was entire. Here is no such thing: it is a copy taken from the record, and purports only to contain the decree, without the premises, or what had been done at previous courts. I am of opinion it was improperly received. The counsel who are to produce a record, ought always to examine it; and, if any part is wanting, to see that the certificate states it to contain all that now is in the office. This point was expressly decided in Hampton v. Speckenagle, 9 Serg. & Rawle, 221,
The defendant then called William Childs, the scrivener who drew the deed, and offered to prove, that when he was applied to, to draw the deed, John M Whitehill and Christine, and no other persons, were present. That Mr. Whitehill said, “ 1 have not the releases from my brothers and sisters, but will obtain them in a very short time.” Christine said he was satisfied. Mr. Whitehill was sufficient to him. “ I believe I made the remark, that if Mr. Whitehill was certain of obtaining them in a short time, I would insert it in the deed that they were obtained. It was agreed by them both that I should. Mr. Christine then remarked, he must have a warranty title.”
The deed which had been given in evidence contained, in the clause which will be hereafter given at length, these words: “And which James Whitehill and others, the heirs of the said John Whitehill, did, by their deed of release, grant and confirm unto the said John M. Whitehill, party hereto, and his heirs and assigns for ever.” The plaintiffs objected to this parol evidence, as being directly contrary to, and going to destroy a material part of the deed. The court admitted the evidence, on the ground it is said, that whatever is stated by the parties at the time of execution of a deed is evidence, or, perhaps, on the ground of fraud in *108 the plaintiffs in now relying on that clause. We have certainly gone further than any other court in the admission of parol evidence. Our reports are full of expressions of regret at this, and we find not a few promises not to go further. In fact, we are now at a period when the most material covenant in a deed would be one that,neither party should attempt by parol evidence to vary the written contract. This testimony goes not to add something omitted by mistake, or substract something consistently with the deed, but to desiroy the most important part of the instrument. It might as well be permitted to swear away the fee simple and reduce it. to a conveyance' for life I have said this, on the supposition that it has the effect intended by him who offered it; but, as there was an exception to the opinion of the court on the effect of it, I shall consider that with the other point. Christine only said Mr. Whitehill was sufficient to him — he must have a warranty; and he said this, when speaking of what title existed in Whitehill at the time. He did not suggest the mode of warranty, nor the manner in which the scrivener should bind Whitehill; that was left to the scrivener. The mode proposed did bind Mr. Whitehill; and, if he objected to the mode, he ought to have said so, and the scrivener would have adopted some other. Whitehill agreed to, and signed it.
Most clearly a material part of any deed or writing cannot be contradicted nor explained away by parol, even in Pennsylvania, unless in cases of fraudulent insertion of it, or mistake. This case proves no fraud nor no mistake in Christine; he must have Mr. Whitehill bound, a warranty. Whitehill agreed to be bound— strike out this, and he is not bound: there is no warranty of title in him. The precise point came before the Supreme Court of Massachusetts, in'th'e case of Townsend v. Weld, 8 Mass, Hep. 146. The evidence was rejected at the trial, and the court say this is an attempt to control the effect of a written and sealed instrument by parol .evidence, which cannot be permitted. Supposing the incumbrance known, it was still competent to the defendant to covenant with his grantee to save him harmless from its effects; and, if such was hot his intention, he should have excepted it. There was error then, in admitting this testimony. If the plaintiffs had brought an action for deceit, in making a false assertion, this evidence might be admissible, but to relieve the defendant from his deed it was not evidence.
The next was an offer to prove, by Smith, what Christine told him; viz.' that Whitehill had not the releases when the deed was given, but was to get them soon, and that Mr.' Whitehill was good enough to him for them. I repeat, if the objeet of the suit were to affect Whitehill barely for a fraud, in inserting a falsehood in his deed, this'might be evidence; It is true, what a party to a suit says, is generally evidence against him; but, where a deed is produced in court as the ground of an action, it never can be destroyed *109 by any declaration of the holder of the deed, as to what is or is not in it. Such evidence might destroy the effect of any deed; but even this evidence did not tend to destroy the effect of this clause; it went to show that Mr. Whitehill was bound to Christine, and that Christine relied on that.
The plaintiffs offered to show that they had sold the property, by article of agreement, and the purchaser refused to complete the purchase on discovering this defect in the title. The court rejected this, and rightly. This suit was instituted for the purpose of recovering the whole purchase money and interest, on account of defect of title. If it had .been for damages, because White-hill had delayed to complete the title under the clause for further assurances, perhaps this evidence might have been given. The defendant held, and had only produced, after proof of notice to produce it, and proof that such a deed existed, a conveyance dated the 19th of July, 1822, from the proprietaries of Springettsbury manor to himself and Jacob Strickler for lands, including that which he had before sold to the plaintiffs. The plaintiffs, in one of their breaches of covenant, had stated an older and better title in John and Richard Penn. When the defendant produced the deed above-mentioned, it was read by the plaintiffs without any objection; and by this deed it appeared that at the time White-hill sold to the plaintiffs, the title was in John and William Penn, and since the institution of this suit, had become vested in John M. Whitehill, the defendant, and Jacob Strickler. After the testimony was closed, the defendant’s counsel made the point before the court that the plaintiffs could not recover on this breach, as the evidence did not correspond with the narr, or support it. The plaintiffs then moved to amend, by inserting William instead of Richard Penn. The defendant objected, and the court refused to permit the amendment, because the testimony was closed. The words of the act of assembly, the act of the 21st of March, 1806, section sixth, are, “ The plaintiff may amend his declaration or statement, and the defendant may alter his plea or defence, on or before the trial of the cause.” Now, if after testimony closed, and argument commenced, the defendant should offer to alter his plea so as to introduce new evidence, and this after the plaintiff’s witnesses were dismissed, a court would be right in rejecting it; but the evidence had been received, and received without objection. I would not suspect the defendant’s counsel in this case, but it has happened that counsel have admitted evidence clearly objectionable on the present state of pleadings in a cause, and aware that it was so, with the intent to object in a later stage. If the objection had been made when this testimony was offered, clearly the plaintiffs might have amended, it was a clerical error. In this case the amendment ought to have been permitted.
I now come to the main point in the cause. The deed stated that “ The said John M. Whitehill and wife, in consideration of *110 one thousand two hundred dollars, to them paid, granted, bargained and sold, aliened, infeoffed, released, and confirmed, and do grant, &c. (repeating the same words) to George Christine and ,Andrew Gotwalt, and to their heirs and assigns, all the following described tract of land, (describing it by courses and distances) containing ten acres neat measure, being part of fifty-eight acres and one hundred perches of land, late the property of John White-hill of Donegal township, deceased, which was decreed by an Orphans’ Court of York county, aforesaid, held the 15th of September, 1812, unto the said John M. Whitehill, party hereto, one of the sons of John Whitehill, deceased, and which James Whitehill and others, the heirs of the said John Whitehill, deceased, did, by their deed of release, grant and confirm to the said John M. White-hill, and to his heirs and assigns for ever.”
The deed contained also a clause of general warranty against all persons claiming the same.
The judge, after stating distinctly that neither John Whitehill, the father, nor John M. Whitehill, the son, had any title to the lands conveyed, was of opinion that this deed did not contain any agreement or covenant that John Whitehill, deceased, was seised in fee, which descended to the defendant and his brothers and sisters, and which was decreed to him in fee by the Orphans’ Court in York county, and was released and confirmed by bis brothers and sisters in fee. He says all that is stated, but not in such terms as to amount to a covenant on which an action can be sustained. He says, further, admitting the truth of the allegations in the first count, they would not form the subject of an action of covenant, but might probably be a good ground for an action on the case for deceit.
A wide range has been taken in the discussion of this cause and the operation of the words grant, bargain, and sell, by the act of 1715, has been discussed. I shall not at this time notice that act further than to say, that although it was not supposed to have exactly the meaning now given to it for near a century after its enactment, yet I am disposed to assent to that construction. A judicial construction which has not been questioned for twenty years, ought to be left untouched by the judiciary. To alter it now by a decision would have all the bad effects of a retrospective law, and would leave the matter liable to be again altered by subsequent judges. I am not sure, however, that the defendant would not be liable on this deed, and the facts in the cause, under any construction which has been given to that law.
The operation of the words grant, and infeoff, has also been agitated, and it has been supposed the case in 2 Caines, 188, and Co. Litt. and the cases there cited prove that neither, nor both of those words, ever imported a warranty. Without going into that question, I would surmise, that Littleton, in the place there quoted, was speaking of the old warranty — warrantia charlee, which was *111 essentially different from the modern covenant of vyarranty, and that perhaps it will be found that Lord Coke, in all the places there cited, was treating of the same species of warranty, and which is now out of use in England. The effect of those words, as importing warranty, and giving the action of covenant, Lord Coke, I think, has no where discussed. The learned judge, in that case, says he has found nothing to contradict the opinion he there gave, except a dictum of Lord Eldon, in Browning v. Wright, 2 Bos. & Pull. 21: it is not a dictum, but the foundation of the whole decision. Buller, Justice, in the same case, says expressly, the words grant and infeoff, amount to a general warranty in law, and have the same force and effect. And it has always appeared to me, that the covenants of special warranty, as they are called, have no meaning, unless inserted after, and to restrain a general warranty express or implied. I can understand why, if I have inserted in my deed an assertion of title in fee, I should add a clause, that I did not mean to warrant that title, except against my own acts. But where I have not stated or alleged a seisin in fee in myself, either directly or by words of that import, a covenant that I will only warrant my seisin in fee against my own acts, is to my mind, mere unmeaning jargon. Judge Kent might, with a small part of his usual industry, have found the opinion of Eldon and Buller was the opinion of many other and great judges. In Man v. Ward, 2 Atk. 228, there is an express decision of Lord Hardwicke, that the words grant and convey are a warranty. The opinion of these three, (all great judges,) I oppose to the New York case, and so leave this point as not yet quite settled in my mind.
A covenant does not require any express words — neither the word agree nor the word covenant, nor any other set word or phrase is necessary to constitute a covenant. It may as vvell relate to things past and done as to things future and to be done, and any words which show that the party asserted that a matter material to the contract had been done, amount in a deed to a covenant that it has been done. Shepherd’s Touchstone, Covenant,p. 160, 161, 162. Com. Dig. Covenant, a. 2, passim. Com. Dig. Covenant, p. 268, If a lease for the lives of A., B., and C. is assigned with a covenant that he has a good estate during the lives of A., B., and C., and they are yet alive, though he does not say and that they are yet alive, yet the assertion is a distinct covenant, of which it will be a breach, if any of them be dead. I consider the clause above cited as an assertion by John M. Whitehill, that he was seised in fee, which came to him in the manner stated! It is contended that it is mere description of the land, or merely a recital; but the county, township, corners and courses, and distances, are the description of the land, and the clause “from part of,” &c., to the end, if descriptive at all, are a description of the title. But a a false description may avoid the deed, and give covenant against
*112 the grantor; it may be descriptive, and an assertion of title also. A recital may and often does import a warranty. Poto, on Contracts, 143. 1 Leon. 122. Severn v. Clerke, there cited is in point. ;The objection was taken that it commenced “ whereas,” &e. but it was held it-was an agreement — for every thing contained in a deed was an agreement: as if a man recited by his deed that he was possessed of a certain interest in certain land, and transferred that interest; if he were not possessed of such interest the covenant would be broken. The same point is directly decided, Johnston v. Proctor, Yelverton, 175, where the grantor recited that he was entitled to the whole of the property, when in fact he had title to only one half, and warranted for quiet enjoyment, notwithstanding any act done by him: the grantee was evicted of a moiety, and brought covenant; and the court held the recital was a warranty; and these cases have never been questioned in England, and are at this day good law. And they ought never to be questioned any where; they accord with the universal principle that the statement of fact, material in the contract, and which is not true, avoids the contract, and gives action to the party injured; and if the false assertion is in a deed, covenant is the action. John M. Whitehill stated in his deed that a title in fee simple for the land he was conveying, was vested in him. This assertion must have been the inducement to the purchase — it brought to Whitehill twelve hundred dollars. It is in law, and in common sense and justice, to be taken as an engagement by deed that he had an estate in fee, and he shall not escape by calling it by this or that technical name; for call if what he will, if it is a statement of a material fact, and was not true, he is liable to an action of covenant, and the plaintiff may recover on it. Much has been said on the construction of covenants. The only rule in our times is to give them that construction meant by the parties, and not to render any part inoperative, unless where they are directly contradictory. It is said the covenant of general warranty against all persons, absorbs and extinauishes the implied covenant from the recital or assertion. I believe no authority can be found for this. An express limited covenant on the same matter may restrain a previous implied general covenant, for ezpressum facit cessare taciturn. This, however, only happens where they apply to the same matter; but an express general covenant on the same subject does not extinguish an implied covenant of the same subject, and the party may sue on the one or the other; but in this case the implied and the express covenants are not the same, do not relate to the same matter, and one may be broken (the implied covenant of title) the moment the deed was executed, and the other not until the party is ousted; they are no way inconsistent, and may both well stand and have effect. 4 Co. SI. Noke’scase. Shepherd’s Touchstone, Covenant, 165. Com. Dig. Covenant, D. 4.