Curia, per

Earlr, J,
Before we come to the consideration of the main question, whether, as matter of law, the defendant was entitled to the abatement of price which he claimed under his plea, and can hold the verdict which allowed it, several preliminary questions of fact should be disposed of. First, it should appear that the slave Bob, was the true consideration of the note sued on ; and that although he accepted, for form’s *303 sake, the bill of sale from Howel Johnson, he actually purchased him from the plaintiffs. That question was submitted to the jury with proper instructions; and the verdict establishes, as it seems to this court on sufficient proof, that the defendant did in fact purchase the slave from the plaintiffs, and that he formed the consideration of the note. Without a bill of sale from them, there was in law an implied warranty of title on their part, for a breach of which they would be liable. Second — was there, at the time of the sale by the plaintiffs, a subsisting out-standing paramount title to the slave Bob in Elizabeth Johnson 1 This question we think was also submitted to the jury with suitable instructions. The circumstances attending the alleged gift h.y Howel to Elizabeth Johnson, were such as to excite suspicion of its fairness ; and his Honor who tried the cause, seems to have intimated to the jury, that it was probably fraupulent and void : And they were specially instructed to determine that question. Their verdict seems to this court to have established that there' was a valid gift to Elizabeth Johnson, before the sale by Howel Johnson to the plaintiffs, which was not fraudulent and void as to creditors. And although-we might not come to the same conclusion from the facts proved, we do not feel at liberty to disturb the verdict, 011 a question within the province of the jury, which was fairly submitted to them. The third question of fact is, whether the defendant, after his purchase of Bob front the plaintiffs, did actually perfect his title to Bob, by purchasing fiom Elizabeth Johnson her out-standing paramount title. On this point the proof is, that the defendant, being sued for Bob by Elizabeth Johnson, made a compromise with her, and procured her bill of sale of him, with other slaves, which she also claimed, and which were in dispute between them. The jury, on the case made by the defendant, under his special plea in bar, allowed him an abatement equal to the sum paid by him in extinguishing the paramount title of Elizabeth Johnson, and perfecting his own, although instructed otherwise by the court. And the main question of law is thus presented, whether the defendant can be allowed to retain this verdict.
And first, as to the form of pleading, under which this matter of defence was brought forward. That it would have formed a proper subject of discount, under notice, cannot be doubted, if it be a valid defence at all. And it seems to have been considered as available only under that proceeding. But I apprehend it might well be pleaded specially in bar, that there was an out-standing paramount title in another, by which the defendant sustained damages, and thereby ensued a breach of the plaintiffs’s warranty of title.
The whole of the evidence to establish the defence, seems to have been *304 admitted under the special plea, without objection; and. the question Was made on its legal effect; and no exception has been taken in the argument here, to the form of pleading. We come then to consider whether such defence could avail the defendant in action brought on tbé note.
Whatever difference may exist between the rules of the common law and those of the civil law, in relation to the implied' warranty of soundness and quality in the sale of chattels, there is none in relation to the warranty of title. In both there is an implied warranty of title on the part of the vendor/ in every sale of á chattel which forms part of the consideration of the contract, and for breach of which the vendee is entitled to his redress. Where there is a total failure of consideration, in this respect, it seems never to have been questioned, that the vendee was entitled not only to his action on the warranty in case he had paid the price, but if sued for the price; that he might resist the recovery. The question' has been in relation to the evidence which he shall be required to produce, to show that the warranty has been broken, and that the consideration has failed. And here there has been a diversity of opinion among speculative writers, and of adjudications among the courts. The point of controversy seems to have been, whether the vendee could either maintain an action of covenant on the Warranty, or resist an action for the price, without actual eviction. And the cases, especially on’ real property, depending on the same principles, have mainly turned on the form and construction of the covenant of warranty, in England, and some of the United States, the strict rules of the common law are still adhered to, and without an express cbvenant of seizin, “ that the vendor is lawfully seized,'and hath good right and authority to sell,” no action would lie against him before eviction : And a covenant of seizin cannot be implied from a general warranty of title. 2 B. & P. 13, Doug. 654. 2 Caines Rep. 188. 1 Mass. Rep. 464. 4 Oranch, 430, 3 Johns. Rep. 471. 5 Johns. Rep. 120.
It would be more an employment of curious research, than of actual utility, to trace the history of our own doctrines on that subject; and to enumerate the steps by which we have come to adopt a more liberal and expeditious mode of attaining the ends of justice.
In relation to the warranty of title, there does not seem tó have been at any period in our jurisprudence, any material difference between the rules applicable to real, and those to personal property, beyond that created by the statute of frauds, which requires contracts concerning lands to be in writing. But so far as regards the construction and legal effect of the warranty, and also the mode and measure of redress, the rules, I apprehend, are the same.' In relation to the warranty itself, we have adopted *305 the rules of the civil law; and the means of redress we have still further extended. In the learned and well considered judgment of Mr. Justice Brevard, in Furman vs. Elmore, be remarks, “ indeed, there seems to be very little reason, if any, why there should be a distinction made, in the warranty arising by implication of law in the transfer of real and personal property, especially in relation to the title.”
The Act of 1795, prescribing the form of a conveyance of real estate, contains no express covenant of seisin : and by the rules of the common law, as expounded in England and New York, a covenant of seisin' will not be implied from a covenant to defend the title. Our courts, however, began very early to apply the principle of the civil law, which raises by implication a warranty of title on every salé,' to the construction of the covenant of general warranty to'defend the title ; and have made it equivalent to a covenant of seisin. “ It cannot well be presumed, says Mr. Justice Brevard, that the seller does not undertake to convey a good title ; that he has at the time of bargaining and conveying, lawful authority to sell; and also that he hath seisin of the land, without which he would have no authority to sell.” That covenant has always been considered as' broken, whenever a paramount title could be shewn in another; and it has been uniformly held that the' vendee might bring covenant on the warranty, or resist an action for the price, without actual eviction. Pringle vs. The Executors of Whitten, 1 Bay, 254; Administrators of Bell vs. Administrators of Higgins, 1 Bay, 326; Sumter vs. Welch, 2 Bay, 558; Champness vs. Johnson, 1809; Johnson vs. Nixon, 1811; Furman vs. Elmore, 1812; McKay vs. Collins, 1 N. & M’C. 186.
There was at first some hesitation in cases where the failure went only tó part of the land sold and conveyed. And it was made a question whether a court of law could afford adequate relief, even under the discount law. But a train of decisions has at length established'the rule, that on the sale of lands, the failure of title as to part only of what is conveyed, is a breach of the warranty or implied covenant of seisin, which will entitle the vendee to his action at law, in case he has paid the price, ór to an abatement, in case he shall be sued to recover it;' and that either mode of redress may be resorted to without actual eviction. In the early case of The Stale vs. Gaillard, Burke, J. delivering the opinion of the court, put the question on the civil law principle, that a sound price deserves a sound commodity, and that when there is a failure of consideration, it vitiates the contract in toto, or entitles the party injured to such an abatement on the price as would make him reparation. That was a case of misrepresentation, but the rule and principle are the same.
It is supposed that the eases of Carter vs. Carter, I Bail. 217; Bordeaux *306 vs. Cave, Ibid. 250; and Westbrook vs. McMillan, Ibid. 159, have thrown important restrictions on this rule ; and have in fact excluded this sort of defence in all cases where the purchaser remains in possession. But it will be found on examination, that each of these cases was determined on its particular circumstances. For in Carter vs. Carter, Nott, J. lays down the general rule, “ that the seller of a tract of land cannot recover the consideration money if the purchaser can show an out-standing paramount title in another. But it must be a subsisting title, such as will deprive the party of the benefit of his purchase. So where the number of acres has fallen short, or a part has been taken off by a paramount title, the defendant has been allowed a deduction pro tanto.” In those cases, the purchaser had been long in possession, had paid part of the purchase money; and it was found that a court of law could not do adequate justice to all the parties. But in Morgan vs. Hext, Fall Term, 1829, suit brought on an obligation given for land, the defence was, that there was an outstanding title. Nott, J. — “That will be a good defence if it can be sustained. It presents a simple isolated question of title, which is properly cognizable at law.”
In relation to the sale of personal chattels, even the common law raises an implied warranty of title : But then the purchaser cannot resist payment of the price in cases free from fraud, while the contract continues open, and he has possession. 2 Kent Com. 472. The rule here has been greatly relaxed. And it may be well stated in the words of Mr. Kent. “ The defendant, for the purpose of preventing circuity oí action, may show, by way of defence, in order to defeat or lessen the recovery, a total or partial failure of consideration, as the case may be, when suit for the consideration of a sale, or upon the security given for the purchase money.” And I apprehend this rule applies as well to failure of consideration in regard to title, as to quality or soundness. The warranty in both is the same; and enters equally into, and forms part of, the consideration of the sale. I consider it, therefore, well settled, that a total or partial failure in regard to title, as well as a total or partial failure in regard to soundness, will avail a purchaser of personal chattels as a valid defence when sued for the purchase money ; to the same extent, in the same form, and upon the same principles, as the like failure of title or quality, or misrepresentation of quality, would avail a purchaser of real property. Says Justice Brevard, in Furman vs. Elmore, “ I am the more reconciled to the doctrine which has been established with us, when I reflect that it is uniform, consistent, and harmonious in its application both to real and personal property.”
The question recurs, has there been in the case at bar, a total or partial *307 failure of consideration, which entitles the defendant to resist the recovery-in whole or in part.
The verdict establishes that there was a subsisting out-standing paramount title in another to the slave Bob, an individual subject of -sale, incapable of division into parts, to which warranty was single and entire. A failure of title, therefore, went to the whole consideration. - And if it bad continued out-standing at the time of trial, the defendant must have had a general verdict. It is for this reason I have conceded it might have been pleaded in bar, or even given in evidence under the general issue. The defendant, however, has extinguished the paramount title by purchase, and has acquired it in himself. And it was plausibly contended for the defendant, that inasmuch as he made out a paramount title in another, there was a total breach of warranty on the part of the plaintiff; and whatever it might have cost the defendant to extinguish it, was immaterial, and should not benefit the plaintiff, who sold what he had no right to sell. But the court has come to a different conclusion. And as this sort of defence has. been let in rather on principles of equity, than of strict law, it does not seem to us that the defendant should be allowed an abatement beyond his actual damage. Having extinguished the title, if he had sued upon the warranty, the question would have been one of damages. And he should not be allowed more in this form. But he has done that which the plaintiff would have been bound to do if he had notice ; perfected the title which the plaintiff warranted ; and we think he should be allowed an abatement pro tanto. It is no unfit subject for a court of law ; it is a simple question of title and price, susceptible of clear proof, and which we suppose was settled on clear proof on the trial below.
The cases of Scott vs. Woodsides, in Equity, 1818, and Ward vs. Revel, at law, 1828, both reported in the Carolina Law Journal, 178, 181, are authorities directly on the point, and conclusive. And it was for the purpose of introducing these authorities that I have demonstrated the analogy, or rather the identity, of the rules relating to real, and 'those to personal property. The latter was assumpsit on a note. Defence, that plaintiff was not the owner of part of the land sold for which the note was given. The proof was that the defendant, finding part of the land conveyed to be vacant, took out a new grant to himself; and the jury allowed him a pro rata deduction for the whole number of acres. The court, in granting a new trial, says, “he should have informed the plaintiff, and called on him to perfect the title, or he should have given up the bargain.” And concludes, “ when a partial loss is sustained, and the contract not abandoned, the true measure of damages is the value of the part lost, or that which the vendee pays for it.” And relies on Searcy vs. Kirkpatrick, *308 1 Cro. Rep. 211; Hull vs. Executors of Cunningham, 1 Mumf. 330. Here the subject matter of the sale was incapable of division, or partial loss. The measure of abatement is the sum he gave to perfect his title. This .the jury allowed. And the motion for a new trial is refused.
.G-antt, Richardson, Evans, and Butler, JJ. concurred.