## Peay as Rec'r. vs. Wright.

Those only can be properly made defendants in equity against whom, under the allegations of the bill if proven, a decree would pass.

The rule that a defendant may require those to be made co-defendants with him, who are liable over to him in the event of an adverse decree, does not apply to the case where such liability is a legal one, and may be enforced in the courts of law.

As a general rule, after deed executed a court of equity will not rescind the contract of sale, upon the mere ground of misrepresentation as to freedom from incumbrance or seizin, but will leave the party complaining to his remedy at law upon the covenants in the deed.

### *Appeal from Pulaski Chancery Court.*

Hon. Hulbert F. Fairchild, Chancellor.

S. H. Hempstead, for appellant.

The misrepresentation of a material fact—(or concealment of defects in title, or of an outstanding title) invalidates a contract, whether the misrepresentation be wilfully or innocently made. 13 *Peters* 26; 1 *A. K. Marsh.* 496; 1 *Story's Eq.* 193; 4 *How. Miss. Rep.* 435; 3 *Humph.* 347; 4 *Scam.* 569; 1 *McLean* 50; 5 *J. J. Marsh.* 96; 3 *Cranch* 381.

The statute of limitations to be availed of, must be relied upon in the answer, and so of lapse of time. 2 *John. Ch.* 182; 7 *Paige* 373; 6 *J. C. R.* 132; 5 *Ala.* 90.

Watkins & Gallagher and Garland, contra.

Whenever means of correct information upon the subject of the title is accessible to the parties, securities are not to be held responsible on the misrepresentation of the principal. *Yeates et al. vs. Pryor,* 6 *Eng.* 58.

When lapse of time appears on the face of the bill the

OF THE STATE OF ARKANSAS. **199**

TERM, 1860.]                    Peay, as Rec'r. vs. Wright.

demurrer clause in the answer secures the benefit of it to the respondent without specially relying upon it. *Story's Eq. Pl.* 503; 6 *Eng.* 411; *Sullivan vs. Hadley,* 16 *Ark.* 129.

The liability of Wright rested upon his covenants—a legal liability not to be enforced in a court of equity. *Hill on Trustees* 121, 122; 508 *and notes.*

Hon. HARRIS FLANAGIN, Special Judge, delivered the opinion of the Court.

The trustees of the Real Estate Bank, on the 29th day of January, A. D. 1850, filed their bill in chancery against the present defendants, David R. Coulter and Turner H. Buckner, and it was heard as to Coulter and Buckner and a decree for them. The trustees appealed, (See *Biscoe et al. vs. Coulter et al.* 18 *Ark. p.* 23,) and the decree was affirmed. By consent the case was not disposed of as to the present defendants before appeal, and the case was sent back to be determined as to them. Upon the hearing the bill was dismissed as to the remaining defendants. In the meantime, the case had been ordered to progress in the name of Peay as receiver, and Peay appeals. The facts of the case, so far as it affects Coulter and Buckner, are stated in the opinion, and will not be stated here, except to show the case as against the appellees.

The bill charges that Benjamin H. G. Hartfield borrowed of the Bank, on his promissory note with Robert Hamilton and Benjamin F. Hawkins as securities, two thousand nine hundred and forty-five dollars and thirty-three cents, on the 19th of April, 1840; also on his writing obligatory with William Moss and Henry K. Brown as securities, $1,566 67, on the 21st December, 1839. Suits were brought at law against the securities, and a foreclosure had in chancery on lands mortgaged to the Bank. Hartfield's securities applied to the trustees and proposed that Hartfield should give up certain lands to the trustees and the debts should be released. The legal title of a part of the lands was in the name of William Wright. The complainants consented upon the representations of the

securities, and especially upon the representation of Brown and Hartfield, that the title to said land was good and unincumbered. The securities induced Hartfield to return to perfect the agreement, and it was perfected at the earnest solicitation of Brown, Moss and Hawkins, and their distinct assurance that the land was unincumbered and the title good. The agreement was perfected the 15th April, 1846. A part of the lands were conveyed by William Wright.

To secure Hawkins and Hamilton, Hartfield had conveyed lands to them, which were included among the lands which were charged with the debt in the chancery suit, and decree without objection on the part of Hawkins and Hamilton. Some of these lands were stricken off to the State, on the third day of November, 1845, and were sold to Coulter and Buckner, February 28th, 1848. The forfeiture was not discovered until the summer of 1849. Hamilton is dead and insolvent. Prays that the agreement as against the securities be set aside, and that the value of the lands conveyed by Wright be decreed against him.

Complainants exhibit deeds from William Wright to trustees for some of the lands, amongst which are the east half of northwest quarter of section one, south-east quarter of section one, fractional west half of south-west quarter of section six, with covenants of seizin, against incumbrances and general warranty.

William Moss filed his answer August 18th, 1854—acknowledges his original liability as charged; denies that he did anything whatever in making representations to the trustees in relation to the land, or in inducing them to receive the land in lieu of debts, or that he knew anything about it until it was done—urged Hartfield to return, to release him from his liability, but did not suggest any particular way of doing so—knows nothing of the land and incumbrances except from complainant's bill.

Benjamin F. Hawkins on the same day filed his answer. He acknowledges his liability as charged in the bill: Denies that

he ever applied to the trustees, and proposed to them to take the land and release the debts: Denies that he ever made any declaration or statement to the trustees in regard to title, or ever gave them any assurance in regard to the title: Admits that he urged Hartfield to return and release him, but did not suggest any particular way of doing so. He knows nothing of the title except from complainant's bill.

Henry K. Brown, on the twenty-first day of August, 1854, filed his answer: Admits the original liability as security: Applied to the trustees and asked them to take Hartfield's land and release the debt: Denies that he made any representations or assurances about the title to the land in controversy, except that there were no mortgage or judgment liens on record. He was present and assented to the consummation of the agreement: The agreement was made between Hartfield and the trustees.

William Wright answers: Benjamin H. G. Hartfield made his deed voluntarily to defendant, for the lands mentioned in the deed to complainant, without consideration; requested him to hold the lands, and convey them to complainants upon such agreement as he, Hartfield, might afterwards make: Did not know that there was any incumbrance for taxes, and made no representations in relation thereto. He was a trustee, and complainant knew it—never received anything from complainants as consideration: Refused to execute the deed with the covenants, but was persuaded to do so under an assurance that he would not be liable. Propounds several interrogatories to the complainants.

The trustees in response to the interrogatories propounded: Admit that George Hill as trustee, and the attorney of the Bank had information that Wright held the lands as trustee for Hartfield: That no consideration passed from the trustee to Wright for the deed and that Edward Brittin was the agent of the trustees.

The case abated as to Robert Hamilton.

The parties made an agreement whereby the case was to be

heard upon the bill and exhibits, answers and exhibits, depositions, interrogatories and responses, subject to objection for want of competency and relevancy.

At the hearing there was read the deposition of Albert Pike, and William Wright.

A. Pike's deposition, taken December 12th, 1854: He was attorney of the trustees, and had control of the claims against Hartfield; he had taken his negroes from Sevier county to Texas: Brown first made the proposition to take Hartfield's land in the payment of his debts: He assured me that the lands were worth the debt; witness declined to have anything to do with it, and referred Brown to Hill the trustee: Afterwards, Brown and Hawkins came to me, and urged me to advise the taking the lands, and urged various reasons for so doing. I was unwilling to consent, because most of the land was mortgaged to the Bank, and I doubted their value: Witness consented not to oppose the taking the land because the defendants were securities: Nothing was said about the lands being sold for taxes, and witness supposes defendants did not know it: Had Hartfield made the proposition, it would have been rejected: George Hill assented, and I do not recollect that he consulted me as to the propriety of doing so: Wright received nothing for his deed, and witness understood that he held the lands for Hartfield: Brown or Brown & Hawkins told me that the title was in Wright: "I have no recollection that General Hill consulted me about the matter at all. I am sure I had nothing to do with making the arrangement to take the land. The trustees left such matters to each trustee in his own district, and except in cases where they referred a matter of the kind to myself, or to one trustee and myself, it was no part of my business to meddle with it."

William Wright, on the the 20th day of December, 1843, testified: Benjamin H. G. Hartfield, in October, 1845, handed me a deed for some lands to convey to the trustees if they accepted a proposition he had made to take his lands and release his debts: I applied to George Hill to see if the trustees had

acceded to Hartfield's proposal, and was told that they would take one-third of the lands and release Brown; which I told him I had no authority to do, but only upon Hartfield's proposition being accepted. The proposition was afterwards accepted· When I made the deed reference was made to Hartfield's stock note, and it was understood that the deed was made in satisfaction of all of Hartfield's indebtedness. In making this arrangement with Brittin & Hill I acted, and no other person. The securities had nothing to do with it.

The charge as against Wright is, that he had the legal title to certain lands on the third day of November, A. D., 1845, and on that day the lands were forfeited to the State of Arkansas for the non-payment of taxes, and that on the fifteenth day of April he conveyed the lands to the complainants with covenants of seizin, general warranty, and against incumbrances. It is evident that whatever remedy the plaintiff's had, it was at law, unless upon some principle of chancery jurisdiction, relief might be had against him on the ground that he was a necessary party to the suit, and after he was once in court the chancellor would retain the case and give relief without sending the complainants to a court of law.

The rule as to party defendants, is, that those only shall be made parties against whom a decree may be had, *Story's Equity Pleadings* 231; *Trecothick vs. Austin*, 4 *Mason R*. 42; but this rule is qualified (if it can be called a qualification) by the rule that a defendant, generally, has the right that all persons, who would be liable over to him in case of decree against him, should be made co-defendants, *Story's Eq. Pl.* 173; 1 *Daniel Chancey Practice* 329; *Wiser vs. Blackly*, 1 *John. Ch. Rep.* 437.

In this case, if the complainants had obtained a decree against Coulter and Buckner, they would have had no remedy as against Wright, and the only relief asked against him was in case the relief was denied as against Coulter and Buckner, and then for the breach of the covenant; upon which the remedy was strictly legal.

That Wright was not a proper party, is sustained by the Supreme Court of Kentucky. 4 *Bibb* 223. The complainant brought his bill for title against a claimant, and, also, against the complainant's warrantor and the vendor to his warrantor for damages for breach of warranty in case he failed in his claim for title. The court decided that neither the immediate or remote vendor was necessary parties, and the court had no jurisdiction as against them.

In *Watkins heirs vs. Owen*, 2 *J. J. Marshall* 142, there was a bill alleging an outstanding title, and seeking for an adjustment of the title, and in case the oustanding title should be found to be superior, that he should have damages against his warrantor. It is decided that a court of equity, as against the vendor, had no jurisdiction.

When these authorities are considered in connection with the facts, the conclusion is inevitable, that Wright was not a party against whom a decree could be had, nor was he a party against whom Coulter and Buckner could have had a decree, had they been unsuccessful.

The bill having been properly dismissed as to him, the question arises, was his deposition, taken for his co-defendants, competent evidence for them? His deposition was read by consent, subject to objection on the grounds of competency and relevancy. This court has ruled that this agreement cures the objection that the deposition was taken without an order of court. *Pryor et al. vs. Ryburn*, 16 *Ark.* 671.

The remainining objection, that he was interested, does not appear to be sustained by the facts. If satisfaction is had from Moss, Brown and Hawkins, then there would be no recovery against him upon his covenants of warranty. At all events the discharge of Moss, Brown and Hawkins could not help to discharge him from a broken covenant.

These preliminaries being determined, we have to see whether the charges of the bill as against Moss, Brown and Hawkins are admitted or proven, and whether the facts charged are sufficient to justify a decree.

The charge in the bill rests upon the allegation that the lands

were taken upon the false representations of defendants Moss, Brown and Hawkins, that the land was free from incumbrances, and that the title was good. It is specially denied by each of the defendants, that such representations were made, and although partially proven against Brown and Hawkins, it is only by one witness; and even this proof does not bring home the misrepresentation to Hill the trustee. If the misrepresentation had been by the vendor, as a general rule, a court of chancery will not rescind a contract after conveyance on account of mere defect of title, but will leave the purchaser to his remedy upon the covenants. *Woodruff vs. Bernie*, 9 *Paige* 443. In this case the vendor averred that he was the owner.

A purchaser of real estate, upon a failure of title, is confined to the covenants contained in his deed, unless in case of fraud. *Frost vs. Raymond* 2 *Caines Rep.* 188; this rule is re-affirmed in *Abbot vs. Allen*, 2 *John. Ch. Rep.* 519.

In *Edwards vs. McLeary*, *Cowpers' Eq. Rep.* 305, there was a concealment of material facts known to the vendor, and the court rescinded the contract on the ground 'of fraud alone.

In *Beall vs. Seively et al.* 8 *Leigh Rep.*, the court held, in order to have a contract rescinded in equity, after deed, the complainant must show first, a defect in title; second knowledge and concealment by the vendor; and third, ignorance on the part of the vendee.

In *Tolman vs. Green*, 3 *Sandford* 439, it was held, that after deed the vendee must rely on it alone, except for fraud. False representations are not ground of equitable relief, unless the vendor knew them to be false, and the vendee had no means of discovering their falsity.

In this case, waiving all questions as to the amount of testimony necessary to overturn the answer, it does not appear that the vendors, Hartfield and Wright, ever made any representations true or false, about the land ; and if it could be held that Hartfield's securities are to be bound by their representations, then, according to the testimony of Pike, Moss never spoke upon the subject, but Brown and Hawkins did make represen-

tations about their value, which are true, so far as the record goes. He supposes they knew nothing about the forfeiture for non-payment of taxes. Brown, or Brown and Hawkins, told witness that the title was in Wright. The witness does not recollect that he ever communicated the matter to Hill, who made the contract, nor that Hill ever consulted him about it. The witness had nothing to do in making the trade.

Wright testifies that he, as Hartfield's agent, made the trade with Hill, the trustees and Brittin the agent; that the securities had nothing to do with it.

The facts sufficiently show that a few dollars would have released the lands for some eighteen months after the sale, and no one could have supposed, that the forfeiture, if it had been known, would have been regarded as important. The amount necessary would have been a matter of indifference to the parties in a negotiation where such an amount was involved.

It is altogether likely, that if Hartfield and Wright had not made the sale of the lands, and the complainants had not released the securities, that they, during the interval between the time the lands were stricken off to the State in November, 1845, and the absolute forfeiture, would have redeemed them, and thus protected themselves from a great loss. The lands, which Hawkins held as an indemnity, might or might not have been made available towards his discharge.

In this case, the securities are discharged at law; they have committed no fraud; they cannot be placed in the position they were in before the discharge, in relation to collaterals. It is therefore held that, under these circumstances, the bill was properly dismissed as to the remaining defendants.

Let the decree be affirmed.

Mr. Justice FAIRCHILD did not sit in this case.