# Patterson *against* Lanning.

In a partition of lands between tenants in common, who derive their estate by descent, there is an implied warranty of title: Hence in an action of ejectment by one of them, after partition, for a part of the land allotted to him, another of those who were tenants in common, is not a competent witness for the plaintiff.

ERROR to the special court of common pleas of *Bradford* county.

Mary Ann Lanning against William Patterson and others. Ejectment for 800 acres of land.

The plaintiff gave in evidence a patent for the land in controversy to Mathias Hollenbach, who died intestate, leaving as his heirs at law, George M. Hollenbach, Mary Ann Lanning, widow, Ellen J. intermarried with Charles F. Wells and Sarah H. intermarried with Chester Butler. Also a deed of partition between all the said heirs, by which the land in dispute was vested in Mary Ann Lanning, the plaintiff in severalty, and other parts of the estate of Mathias Hollenbach, deceased, were vested severally in the other heirs. This deed contained no express warranty either of quantity or title of the land mentioned in it.

The plaintiff then offered Charles F. Wells, who was the husband of one of the heirs at law, as a witness, who was objected to by the defendant, on the ground of interest; but the court overruled the objection, and the witness gave evidence material to the plaintiff's cause. This was the subject of the error assigned.

*Baldwin,* for plaintiff in error, cited *Co. Lit.* 173 *b,* 174 *a; * 7 *Bac. Ab.* 231.

*Williston, contra,* cited 5 *Watts* 379.

The opinion of the court was delivered by

KENNEDY, J.—If the tenancy in common, which existed prior to the deed of partition, made in this case, between the tenants, had been created by an act of their own, the decision of the court below, admitting Charles F. Wells, who with his wife, one of the tenants in common in fee, was a party to the deed of partition, to testify as a witness on behalf of Mary Ann Lanning, the plaintiff below, another of the tenants in common and party also to the deed, would, according to the doctrine of this court, established in Weiser *v.* Weiser, 5 *Watts* 279, have been correct. But this was not the case. They acquired their respective interests in the lands, mentioned in the deed, which were thereby parted and divided among them, by descent or act of the law; in the same manner as parceners in England do by the rule of the common law. The act of 1794, which regulated the descent of real estates in this commonwealth at the time their ancestor died, cast the lands, which they subsequently, by their deed of partition, divided and apportioned among themselves, upon them, declaring that they should "inherit and enjoy the same as tenants in common in equal parts, in the *same manner as if they were all daughters of the intestate.*" The same act also provided, that partition might be had at any time, of the lands upon the application of one or more of them, by petition for that purpose to the orphans' court of the county within which the lands lay. The course of proceeding for having the partition made, by setting apart and allotting to each, his or her proper proportion or purpart, is also thereby prescribed; so that either one might compel it to be done at pleasure. In this respect, they would seem to have been placed upon the same footing, in regard to each other, as co-parceners in England stood at common law. Parceners take by *descent*, which is an act of the law, as the tenants in common did in this case before they made partition; and as Lord Coke observes, "there is a diversity between a descent, which is an act of the law, and a purchase, which is an act of the party." *Co. Lit.* 163 *b.* When the law bestows an estate, it is careful to provide the party with whatever may be requisite, not only to relieve him from any inconvenience which may attend his enjoying the estate, but also to secure him against any loss, as far as may be practicable, which may accrue in consequence of the relief granted; whereas in the case of an estate acquired by purchase, the law leaves the party to seek relief from such inconvenience, as shall be necessarily incident to his purchase, by his own exertion or act, and in his doing so to provide, if he wishes it, against any future loss which may accrue to him from the relief which he has gained. Thus, for instance, when any one or more of a number of parceners felt any inconvenience, arising from the united possession and enjoyment of the lands held in coparcenery, the law enabled him or them, to compel

[Patterson v. Lanning.]

the remaining parceners to make a partition of the lands. But in the case of joint tenants or tenants in common, they having become such by their own act, could not at the common law compel a partition. It was competent for them, however, to make partition by agreement. But then if they made partition, without annexing an express warranty or condition to it, so that if any one of them should thereafter be evicted of his part, or any portion thereof, by a title paramount, he should have right to claim a new partition or compensation from the rest for his loss, the law would not imply any thing of the kind, as it would in the case of parceners, who became invested with their rights to the land by act of the law. By virtue of the condition annexed, by implication of law, to a partition of lands, made between parceners by consent or deed, if any one of them should be evicted afterwards from any part of her allotment, however small or insignificant, she might re-enter upon the other parceners or their heirs, and thus annul the whole partition; or she might, at her election, by virtue of the warranty annexed to the partition by law, vouch them when sued for her part or any portion thereof, in which case, she would only be entitled to have a recompense for the part actually taken from her. *Co. Lit.* 173 *b*, 174 *a;* Bastard's case, 4 *Co.* 121; 4 *Cruize Dig. tit.* 32, *Deed, chap.* 24, *sect.* 34. So if there be two coparceners of certain lands with warranty, and they make partition of the lands, the warranty shall remain, because they were compellable from the first to make partition. *Co. Lit.* 165 *a*, 165 *b*. The law, however, is different as to joint tenants, who at the common law were not compellable to make partition; and hence, if they hold their lands under warranty, and make partition thereof without writ, the warranty will be destroyed. *Co. Lit.* 187 *a*. And besides it would seem as if the legislature intended, by the act of 1794, that the children of an intestate, dying seised of lands situate within the state, as also his other lineal descendants of a more remote degree, when nearest to him, at the time of his death, and standing in the same degree of relationship to him, should succeed to the lands by descent, and hold the same as coparceners, or else, why use, in the close of the second clause of the third section of the act, the following words: " such estate shall descend, and be distributed to the said several persons, as tenants in common, in equal parts, however remote from the intestate the common degree of consanguinity may be, in *the same manner as if they were all daughters* of the person dying intestate." The words here, " in the same manner as if they were all daughters," may, very fairly, I think, be regarded as having a reference to the manner in which lands descended to coparceners in England, according to the rule of the common law; for by it, two or more daughters there, being the only issue of the intestate, at the time of his death, his lands descended to them as parceners; that is, each taking an *equal interest* therein, *with a right to compel partition. Lit. sect.* 241; 1 *Inst.* 164 *b*. The words

[Patterson v. Lanning.]

just recited, were no doubt used in contradiction to the rule, which governed in the case where the issue consisted of sons, or sons and daughters, which was, that the eldest son in being at the time of the death of the ancestor, took the whole of the lands by descent. It is true, however, that these words seem, by their position to be placed in immediate connection with the second clause of the section; which provides for the lineal descendants of the intestate, standing in equal degree to him, but in a more remote one than children; and therefore might be said, not to be applicable to the first clause, which embraces the children only of the intestate. But as no sufficient reason can, I apprehend, be given why the legislature should have designed to make a distinction in this respect, between the children and the more remote issue, in a direct line, of the intestate, the words may be considered as explanatory of the manner in which it was intended, either should hold the lands. The parties, therefore, to the deed of partition given in evidence here, must be considered as resembling coparceners in many respects, at least if not in all. They acquired the lands by descent or act of law, as coparceners do in England; and by the same law under which they acquired the lands, they were rendered liable to make partition of them. So in regard to the privity that existed between them, it would seem to have been threefold, as in the case of coparceners: first, in estate; second, in person; and third, in possession; and not like as it is between tenants in common created by their own act, where there is no privity except that in possession. *Co. Lit.* 169. *a.* Seeing then, they were created tenants in common by the act of the law, without any act whatever of their own; and that the same law also rendered them liable to make partition at the will and pleasure of any one or more of their co-tenants, it would therefore seem to be right, not only on the ground of analogy, that a partition having been made between them by deed, the same warranty and condition should be considered as annexed by law thereto, as if they had been parceners; but likewise on the ground of reason, it would seem to be requisite that they, as also tenants in common, created in this state by our law of descents, should be regarded as coparceners, in order that their partition, by deed, of the lands held in common by them, shall not have the effect of destroying any previous warranty made, securing the lands to their ancestor, as might, perhaps, be the case, were they to be considered in the light of tenants in common created by purchase. We, therefore think, that Charles F. Wells was interested in the event of this action, in favour of the party who called him, and that the court below, for this reason, erred in permitting him to testify in her favour.

Judgment reversed, and a *venire de novo* awarded.