Wheeler, G. J. —
The contract of the 6th of April,
1838, was not a contract for the sale of land. It contemplated the future acquisition of land, in which, when acquired, the parties should have .an equal joint interest. That interest would be more or less valuable, according to the quality and locality of the land which should be selected. The purchaser was intrusted with making the selection, and the parties were to participate equally in the benefits to be derived from it when made. If it proved injudicious, and loss were sustained, it would certainly be a very hard case that the entire loss should fall on the other partner, and the locator should take the whole that remained. ' That certainly was not what the parties intended.
The money consideration paid did not convert the contract into a sale of land, for no land had been secured. If it had been a contract for the sale of a half league of land *367 already located, it would have been a different case. The parties would have known about what they were contracting, and the purchaser would have acquired a right to a thing certain, which he would have been entitled to have conveyed to him for the price stipulated, however disadvantageous the contract might prove to the other party. But such is not the case. The purchaser contracted for one-half of what he might secure by means of the certificate, be that more or less. That was the intention of the contract. It would certainly be extremely inequitable to allow him, through a mistake of his own, though without fault on his part, to possess himself of the whole. Against the consequences of such a mistake, it would seem that equity ought to relieve. It was an adventure, in which the parties contributed, as they deemed, equally of their means, and were to share equally the profits. It is analogous to the case of a joint purchase, made by two persons, who advance and pay the purchase money in equal proportions, which, according to the common law, would create a joint tenantcy, but by our law, as the right of survivor-ship is abolished, would be deemed to create a trust, and if the purchase be made, and the title taken in the name of one of them, he becomes a trustee, and the other will be entitled to his share as a resulting trust. (2 Story’s Eq., § 1206.)
If the parties had contributed equal sums, to be invested in the purchase of land, and one of them, being intrusted with malting the purchase, had taken the title in his own name, or in their joint names, and a loss were sustained by the failure of the title to a part, it cannot be doubted that, on principles of equity, each must bear his proportion of the loss. In such a case, they might have their recourse against their vendor upon the covenants in the deed. But in the present there is no recourse against the government on account of the failure of title, and the purchaser had but an equitable title. It, therefore, differs from the ordinary *368 case of a partition of land between tenants in common. The division of the land, after it was acquired, by which the locator obtained the whole that was secured by the certificate, was made under an obvious mistake of fact; the consequence of which is, that the grantee of the certificate has lost all the benefit of it, and is remediless, unless the division be set aside, or the defendant be required- to yiake contribution. From the consequences of such, a mistake, equity, it would seéin, ought to relieve. It is a general rule in equity, that an act done, or contract made, under a mistake or ignorance of a material fact, is voidable, and relievable against in equity. Thus, if A buy an estate of B, to which the latter is supposed to have an unquestionable title, and it turn out upon due investigation of the facts, unknown at the time to both parties, that B has no title: as if there be a nearer heir than B, who was supposed to be dead, but is in fact" living: in such a case equity will relieve the purchaser and rescind the contract. (1 Story’s Eq., § 141.) So, if one person should sell a messuage to another, which was at the time swept away by a fiood, or destroyed by an earthquake, without any knowledge of the fact by either party, equity would relieve the purchaser. So, if a person should execute a release to another party, upon the supposition, founded in a mistake, that a certain debt or annuity had been discharged, although both parties were innocent, the release would be set aside on the ground of mistake.. (Id., § 142.) In such case the act or contract is void, as founded upon a mutual mistake of matter constituting its basis. The mistake or ignorance of fact is the subject of relief, when it constitutes a material ingredient in the contract or the motive, of the act done by the parties, and disappoints their intention by a mutual-error. (Id., et seq.) Such was the case in the making of the-division of the land in question. The plain-' tiff, by her deed, released to the defendant the title to half the league, under the mistaken belief that she had an inde *369 feasible title to the residue. The parties were alike ignorant of the existence of the superior title in a third party; the mistake was mutual, and did not arise from any want of care and diligence in the party who seeks to be relieved, and to have the act done in consequence of the ignorance and mistake set aside. But for the mistake, it is clear the deed would not have been executed. It has disappointed the intention of the parties by a mutual error, and has resulted in giving one of them an uneonscientious advantage, against which the other had not any means of providing; and it would seem that she is entitled to have the act done by her set aside, on the clear ground of mistake.
In the view we have taken, we have not considered the case strictly as that of a partition between tenants in common; but, viewing it in that light, what are the rights ot the plaintiff?
In Bustard’s case,' (4 Coke, 121,) it was adjudged, that in every exchange of lands there is implied both a condition of re-entry and a warranty; and, if one party is evicted from the land conveyed to him, he may either re-enter upon his own land or recover upon the warranty; but, in the latter case, the recompense should be confined to the land given in exchange; and that the same condition and warranty were implied in the case of a partition. In both of these species of assurance there was not only an implied warranty, but a condition, which, in case of eviction of either party, gave a right of re-entry upon the other portion. There was, however, this difference between the warranty and the condition. Where a coparcener took advantage of the condition, she defeated the partition as to the whole; but when she vouched by force of the warranty, the partition was not defeated in the whole, but she recovered recompense for the part that was lost. But this implied warranty and condition were, by the common law, confined to a partition made between coparceners, and for the reason, it is supposed, that the right of compulsory par *370 tition was given by the common law only to coparceners, and not to joint tenants, or tenants in common, to whom the right was first given by statute. The common law, having-given this right in favor of coparceners, deemed it reasonable and just that they should not be placed in a worse condition by the partition (which could be compelled by writ of partition or a bill in chancery) than if they had continued to enjoy their respective interests without a partition; in which case, if suit had been commenced upon a paramount title, all must have been impleaded, and in case of recovery, all must have sustained their due proportion of the loss. In order, therefore, that they should not be placed in a worse condition by a compulsory partition, the common law annexed to the partition the implied warranty, as a condition for their ¡n-otection. But as by the common law joint tenants and tenants in common could only make partition by agreement, there was not the same reason, it was thought, why the law should imply a warranty in case of a partition by them; because, in making the partition, it was competent for them, by the terms of their agreement, to provide against future losses by paramount titles. The law implied no warranty or condition, because they were not compellable to make partition, as coparceners were, and might protect themselves by express stipulations or covenants in their deeds of partition.
Such are some of the reasons why, by the common law, a warranty and condition of re-entry were implied in the case of a partition between co¡Darceners and not in a partition by joint tenants and tenants in common. But the statute of 31 Henry VIH, c. 1, which gave to joint tenants and tenants in common the right of partition by compulsory process, gave also the warranty. (Eawle on Gov., 467.)
By our law, the leading distinctive characteristics of those several kinds of estates have been abolished. By the act of the 28th January, 1840, the right of survivorship *371 between joint tenants was abolished, and it was jn'ovided that coparceners might maintain waste against each other. (Hart. Dig., Arts. 588, 589.) And, although the latter provision was omitted in the act of the 18tli March, 1848, (O. & W. Dig., Art. 344, et seq.,) which was intended as a substitute for the former law and repealed it, I apprehend the legislation upon the subject Avould not Avarrant the supposition that it was intended to preserve the common-law distinctions between an estate in coparcenary and other estates in joint ownership. The act of the 5th of February, 1840, “to enable part owners of land to obtain partition thereof,” recognizes no distinction between these several kinds of estates in joint ownership, but treats the tenants all alike, simply as “part owners,” and gives all alike the right of compulsory partition. (Hart. Dig., Art. 2617; 0. & W. Dig., Art. 1510;) [Paschal’s Dig., Art. 4707, Rote 1605.—Reporter.] It also provides against giving the partition the effect of destroying any previous warranty of the title under which the tenants hold, (O. & W. Dig., Art. 1511,) Avhich, in this respect, also places joint tenants and tenants in common upon the same footing as coparceners occupied at the common law. [Paschal’s Dig., Rote 106, pp. 790, 791.—Reporter.]
The effect of these provisions seems to be to destroy the numerous and important distinctions which existed between these several kinds of estates at the common law, and for all practical purposes to reduce them to one estate, namely, an estate in common, with, however, the rights and remedies that appertained to tenants in coparcenary at the common law. This is in harmony Avith the comparative simplicity of our law of realty in other respects, and is a great improvement upon the former state of the law. The refined and artificial distinctions which existed at the common law were calculated only to perplex and embarrass, without producing any corresponding benefits. The practical effect of Aviping them away, and placing all upon *372 the more favored footing of tenancy in coparcenary, giving to joint tenants and tenants in common the right of compulsory partition, and preserving their rights upon any previous warranty, as if they had been coparceners, would seem to be to confer upon them the rights and remedies of coparceners at common law; the most important of which, in case of partition, were the implied condition and warranty, whereby a coparcener, evicted by a permanent title, could defeat the partition in the whole, or recover recompense for the part that was lost.
"We find but few cases where the question has arisen in the courts of this country. The.Supreme Court of Pennsylvania, in the case of Weisner v. Weisner, 5 Watts, 279, where the partition was by deed, which contained a clause of special warranty, held, that no warranty was implied, and that the rights of the tenants in common depended solely upon the covenants in the deed. But, in the subsequent case of Patterson v. Lansing, 10 Watts, 135, the same court held, that in á partition of lands between tenants in common, who derived their estate by descent, there is an implied warranty of title; and this was the case of a partition by deed. In the former case, the decision was probably much influenced by the consideration that the deed of partition contained an express covenant of special warranty, declared on as a general warranty; the court holding that an express covenant qualifies and restrains the generality of an implied covenant. Other considerations were adverted to, which doubtless had their influence upon the decision of the. court. And it is to be observed, moreover, that the statute law of-that State does not appear to have so completely effaced the distinctions between estates held in joint ownership as does ours.
The subject underwent an elaborate examination by the Supreme Court of Tennessee, in the case of Sawyers v. Cator, (8 Humph., 256,) where one tenant in common filed a bill for contribution and reimbursement against his *373 co-tenants and their alienees, and the court held, that in partition between tenants in common there is an implied warranty between the parties to the partition, by which they have the mutual right, in case of eviction by paramount title, to have compensation from each other for loss sustained, and that the remedy is by bill in equity, either by setting aside the partition, as being founded in mistake, if it can be done without injustice; if not, then by a decree of pecuniary contribution. It was said the right of entry' did not exist, it was not given by statute, and had never been in use in that State; the implied covenant could not be vouched upon, because that mode of proceeding had never been in use there, and is now obsolete even in England. “We have been able to find (the court said) no precedent for an action of covenant upon such implied warranty. It then necessarily follows, that where there has been a partition between tenants in common, and there is failure of title, such relief must be given by bill in a court of chancery, or it must be altogether denied; a thing that justice and equity will not permit. It seems to us that a court of chancery is peculiarly adapted to give the relief, which is upon the principle of contribution; a subject over which such courts have so long had almost exclusive jurisdiction. We therefore think the remedy in a court of chancery, either by setting aside the partition, when improperly made and it can be done without injustice to others, or by contribution, when it is most proper.” And as contribution was asked, and Avas deemed more appropriate and just in that case, it was accordingly decreed.
This Ave deem to be the just and equitable doctrine, Avhich ought to obtain in the administration of justice between joint owners of land in cases of partition in the courts of this State. Since, as Ave have seen, our statutory law has abolished the common-law distinctions between the joint OAvn'ers of land, and placed them upon the same footing *374 for all practical purposes, and has rendered them alike liable to make partition at the election of any one or more of their co-tenants, it would seem to follow, that this remedy and mode of relief must be admitted, to avoid an utter denial of justice. Unless it be admitted, parties situated like the plaintiff in the present case would not only be wholly remediless, but would be unable to provide against loss by any precautionary means whatever. The contract obliged the plaintiff to make title in accordance with its terms; she could require no deed or assurance on the part of the defendant, because she held the title to the whole, and the contract did not authorize her to call on the defendant for such deed or assurance. She, therefore, had it not in her power to secure herself by any express cove- • nant by the defendant. Every consideration, therefore, which can address itself to a court of equity to grant relief • in any case, may be invoked on behalf of the plaintiff in this case. "We think she is entitled to the relief which she seeks, to have the proceedings and deed by which the division of the land was effected set aside as founded in mistake, and to have an equitable partition of the land which remains unaffected by the paramount title decreed between herself and'the defendant.
The judgment is therefore reversed, and the cause remanded for further proceedings.
Reversed and remanded.