# Weiser *against* Weiser.

No implied warrantee arises out of a deed of partition between coparceners joint tenants or tenants in common: their liabilities to each other, arising out of the subject matter of the partition, depend upon the express covenants contained in the deed.

An express covenant qualifies and restrains the generality of an implied covenant. *Expressum facit cessare tacitum.*

ERROR to the common pleas of · *Union* county.

This was an action of covenant by George Weiser, administrator of Peter Weiser, against David Weiser and John Bossler, administrators *de bonis non* of Conrad Weiser, deceased.

In the year 1760, Conrad Weiser devised his land to his children Philip, Frederick, Peter, Samuel, Benjamin, Mariah and Margaret, as tenants in common. In 1773, the devisees all executed a deed of partition of the lands among themselves, which contained a clause of special warrantee. One of the parties or he who claimed under him, was evicted and turned out of the possession of the land allotted to him by the deed of partition, by a title paramount; and this action of covenant was brought against the representative of another party

[Weiser v. Weiser.]

to the deed, upon the ground, that a deed of partition necessarily contained an implied warrantee of title. The plaintiff in his declaration set out a general warrantee of title; and offered in evidence the deed, which was objected to on the ground that it did not contain the covenant set out. Whereupon the question arose. The court (Lewis, President) being of opinion, that the law did not raise any implied covenant of title between the parties, rejected the evidence.

*Greenough*, for plaintiff in error, cited 7 *Bac. Ab. tit. Warranty, letter E.* 231; *Ship. Touch.* 165; *Platt on Cov.* 45.

*Bellas*, contra, contended that no implied warrantee arose out of the general terms of a deed of partition; but if it did, that the special warrantee in the deed between these parties excluded the idea of a more extensive liability; and, cited Miller *v.* Heller, 7 *Serg. & Rawle* 32; Christine *v.* Whitehill, 16 *Serg. & Rawle* 113; Whitehill *v.* Christine, 3 *Penns. Rep.* 313; 2 *Johns. Cases* 203; Kent *v.* Welch, 7 *Johns.* 258; Whallon *v.* Kauffman, 19 *Johns.* 97; 7 *Bac. Ab. Letter C.* 228; *Platt on Cov.* 358–381.

The opinion of the Court was delivered by

KENNEDY, J.—The only question presented here is, whether the deed offered in evidence by the plaintiff, contains such a covenant as that set forth in his declaration; for a breach of which he claims to recover damages. It is admitted that the deed contains no express covenant of the same effect; but it is contended, inasmuch as it is a deed of partition, that a general warranty, such as the plaintiff has declared on, arises from the very nature of the transaction, by implication of law, without any such being expressed. It is true, that as between coparceners every partition has annexed to it, not only a warranty, but a condition in law; by virtue of the latter a coparcener, in case of her eviction from any portion of her allotment, however small or insignificant, may re-enter upon the other coparceners or their heirs and defeat or annul the whole partition; or she may by force of the former vouch them, in which case she shall only obtain a recompense for the part lost. *Co. Lit.* 173, *b*, 174, *a.*, 384, *a.*; Bustard's Case, 4 *Co.* 121; 4 *Cruise Dig. tit.* 32, *Deed, c.* 24, *sect.* 24. But here the partition was made between tenants in common, as appears from the plaintiff's showing in his declaration, and the implied warranty, which arises in the case of partition, is confined to a partition made between coparceners, and the law does not create it in any other case of partition. 4 *Cruise Dig. tit.* 32, *Deed, c.* 6, *sect.* 17. This distinction arose, no doubt, from the right of compulsory partition being, in the case of coparceners, the gift of the common law; *Litt. sect.* 247; but in the case of joint tenants and tenants in common, it was first given by the statutes 31 *Hen.* 8, *c.* 1 and 32 *Hen.* 8, *c.* 32; *Litt. sect.* 290, 318; *Co. Litt.* 169, *a.*, 187, *a.*

[Weiser v. Weiser.] ·

The common law having established this right in favour of co-
parceners, because their relationship being created by it, and not by
an act or choice of their own, as in the case of joint tenants and ten-
ants in common, thought it reasonable that it should endure no longer
than the parties should be pleased with it; but at the same time deem-
ed it expedient as well as just, that they should not be placed in a
worse condition by the partition, than if they had continued to en-
joy their respective interests in the lands or property without a di-
vision; because, if the partition had not been made, and there had
existed an outstanding title paramount for a portion of the property,
to recover which a suit had been commenced, they must have been
impleaded jointly, and the loss sustained, by a recovery, would con-
sequently have fallen equally upon all; therefore, after the partition,
a warranty was annexed by the common law to each part, so that if
any one should be impleaded, she might vouch her sisters, or those
who had been her coparceners, at the time of partition, or their heirs,
and by this means also have their aid to deraign the warranty para-
mount, if any existed, annexed to the purchase of their ancestor·
*Co. Lit.* 173, *b*, 174, *a;* Bustard's Case, 4 *Co.* 121.    For, although
by the statute of 31 *Hen.* 8, *c.* 1, *sect.* 2, the writ *de partitione fa-
cienda* is given to joint tenants and tenants in common; and they are
thereby rendered liable to make partition, according to the words of
the statute, "in like manner and form as coparceners by the common
laws of this realm have been and are compelled to do," yet the sta-
tute does not enact nor declare that any warranty shall be annexed,
so as to enable any one or more of them thereafter, in case of being
impleaded for his or their allotments or any portion thereof, to vouch
the rest; but merely provides by the third section, "that every of
the said joint tenants and tenants in common and their heirs, after
such partition made, shall and may have aid of the other or of their
heirs, to the intent to deraign the warranty paramount, and to re-
cover for the rate as is used between coparceners after partition made
by the order of the common law." It was thought nothing but just,
seeing they were thus compelled to make partition, to secure to them
the benefit of such warranty paramount, after the partition should be
made, the same as they were before entitled to it; and an express
provision to this effect was deemed the more especially necessary in
order to preserve it, for anterior thereto, when partition was made
by consent or agreement, which was the only mode, whereby it
could be effected, they, by making partition, destroyed that warranty.
*Co. Lit.* 187, *a*, 169, *a*.    And this circumstance of its destroying
such warranty may, in some cases, have proved an obstacle to thus
making a partition, when they had any doubt as to the goodness of
their titles.    And perhaps ought still to make them cautious, under
like doubts, in making partition merely by agreement, without writ;
or otherwise than in pursuance of the statute; for it would seem
that unless it be so made, all the common law incidents will attend
it.    *Co. Lit.* 187, *a*.    Joint tenants of the freehold or inheritance

v.—2 L

before the passage of this statute were not only restrained to making partition by agreement, but it was necessary to have it consummated by the execution of a deed in order to render it effectual.  *Co. Lit.* 169, *a*, 187, *a.*  But tenants in common, being seised of several estates or interests, might have done it by *parol*, provided it were executed by livery to each one of his separate allotment.  *Co. Lit.* 169, *a.*  But the statute of frauds makes a writing necessary now in all cases of partition made by agreement without writ.  Seeing then that joint tenants and tenants in common, before the statute of 31 *Hen.* 8, could only make partition by agreement, there was no good reason why the law should imply or annex a warranty in such case, because the parties, in making the partition, were perfectly competent, and had full power to provide by the terms of their agreement against future losses by titles paramount or prior incumbrances; and accordingly it became customary to introduce into the deeds of partition mutual covenants in respect to the title, which practice continues to prevail even at the present time.  4 *Cruise Dig. tit.* 32, *Deed, c.* 6, *sect.* 17.  But if it were so, that the statute did annex a warranty to a partition made between joint tenants or tenants in common, such as exists in the case of coparceners, it would not raise it here, because the partition was not made under the statute; and it only extends its operation to partitions made in pursuance thereof. And accordingly Lord Coke lays it down, *Co. Lit.* 169, *a,* " they must pursue that act by writ *de partitione facienda;* and a partition between joint tenants *without writ remains at the common law, &c.*  And so it is, and for the same reason, of tenants in common."  And in *Co. Lit.* 187, *a,* he again repeats, " But since Littleton wrote, joint tenants and tenants in common are generally compelled to make partition by writ framed upon the statutes of 31 and 32 *Hen.* 8: and albeit they be now compellable to make partition, yet seeing they are compellable *by writ*, they must pursue the statutes, and cannot make partition by *parol*, for *that remains at the common law.*"  And so in the same folio he says, " if two joint tenants be of land with warranty, and they make partition by *writing*, the *warranty is destroyed;* but if they make partition by writ of partition upon the statute, the warranty remains, because they are compellable thereto."  And it may be added, also, because under such compulsory partition the benefit of a paramount warranty is expressly preserved, as already mentioned, by the 3d section of the statute of 31 *Hen.* 8, *c.* 1.

We have stated above, that, as the law annexed no warranty in cases of partition made between joint tenants and tenants in common, the parties supplied this by the insertion of mutual covenants clearly and distinctly expressed in the deed, so far as they were willing to become bound to each other, for the goodness of the title and the future enjoyment of their respective allotments, and that such has been the practice from the earliest period down to the present time.  And the deed in question is evidence of its having

[Weiser v. Weiser.]

been done by the parties to the partition therein set forth: but then the covenant, inserted in it, is only a special covenant of warranty; one of much narrower import than that declared on, which is one of general warranty, and, therefore, not the same with that expressed in the deed.   Seeing, then, that the deed contains no such covenant, either express or implied, as that set forth by the plaintiff in his declaration; it is perfectly clear that the deed did not contain any thing which tended to support the plaintiff's -allegation, and was, therefore, rightly rejected by the court.

But even supposing this to have been the case of a deed of partition made between coparceners, still I apprehend that the implied warranty would not have enabled the plaintiff to recover: for it is only a *special*, and not a general warranty that is implied in such case; and which, at most, only entitles the party, upon voucher, to recover, not other land of equal value, but so much of the remaining land alone in value, which was the subject of partition, as shall be sufficient to equalize the loss that may be occasioned by the eviction.   Bustard's Case, 4 *Co.* 121; Eton College *v.* The Bishop of Winchester, 3 *Wils.* 491; *Perk. sect.* 310.   It is one of those warranties to which Lord Coke has allusion in *Co. Lit.* 384. *b.* when he says " that in some cases warranties *in law* do extend to execution in value of *special* lands, and not generally of lands descended in fee simple;" so that the party claiming redress under the warranty annexed by law to partition,would seem to be restricted to the lands, which were the subject of the partition, as long as any part thereof remained, but after they were all gone, he would be without remedy upon such warranty.

But besides this, the implied warranty in partition between coparceners was only in privity; for none shall vouch by force of it, except the parties to the partition, or their heirs, and no assignee.   Bustard's Case, 4 *Co.* 121; *Litt. sect.* 262.   And Lord Coke says, " when the whole privity between coparceners is destroyed, there ceases any recompense to be expected, either upon the condition in law, or warranty in law by force of the partition. 1 *Inst.* 174, *a.*   And hence if a man die seised of two parcels of land of equal value, one held by him in fee simple and the other in fee tail, leaving issue two daughters, who make partition thereof between them, allotting the land in fee tail to the elder daughter and the land in fee simple to the younger, who aliens her land in fee and dies leaving a daughter, such issue, as one of the heirs in tail, may enter into the land in tail and possess it with her aunt, but the aunt shall not enter into half the land in fee simple, in the occupation of the alienee, for *by the alienation*, the privity is destroyed.   *Litt. sect.* 260; 1 *Inst.* 172 *b.*   Now, the plaintiff here is the personal representative of Peter Weiser, who was evicted of the land by a title paramount, and who, according to the plaintiff's statement, as set forth in his declaration, was the devisee, that is, assignee, and not heir of Frederick Weiser, one of the parties to the deed of partition; so that the plaintiff is not the representative of a party to the partition, nor yet

of the heir of a party, but merely the personal representative of the assignee of one, and, therefore, agreeably to the rule mentioned above, the plaintiff's intestate could not have vouched, when living, by force of the implied warranty, and of course can have no claim to any recompense from the defendant.

But, in the next place, admitting that a personal action of covenant may be maintained, which, I think, is somewhat doubtful, at least, upon a breach of the implied warranty that arises in the case of a partition made between coparceners, there is still another objection, which, as it appears to me, would be fatal to the plaintiff's recovery upon it, even if it were to be considered a general warranty, which it certainly is not.  The parties to the deed of partition, have thought proper to insert in it an express covenant of special warranty, limiting the responsibility of each for the goodness of the title to the lands divided, to the acts done or suffered by him or her, which might happen to affect it, and against such persons only as should lawfully claim by, from, or under him or her, &c.  Now, according to the fourth resolution in *Noke's Case*, 4 *Co.* 80, it was held by Popham, chief justice, and the whole court, as Lord Coke says, that an express covenant qualified the generality of an implied covenant, and restrained it by the mutual consent of the parties, so that it should not extend any further than the express covenant.  *Expressum facit cessare tacitum.*  And although in Proctor *v.* Johnson, 2 *Brownl.* 214, the chief justice seems to doubt the authority of this resolution, and says that this point in Noke's case was not adjudged, but was a matter spoken of collaterally in the case, and the case was adjudged against the plaintiff for other reasons; and again, in Croke's report of the case, *Cro. Eliz.* 675, he says, that Popham, chief justice, inclined to this opinion, but the other justices did not deliver any opinion therein, yet Lord Hale, in Deering *v.* Farnington, 1 *Mod.* 113, lays down the law according to this resolution, and the authority of Noke's case upon this point has been since recognised in many cases, and is now considered an established rule of law.  Hayes *v.* Bickerstaff, *Vaughan* 126; Brown *v.* Brown, 1 *Lev.* 57; Fromtin *v.* Small, 2 *L Raym.* 1419; Clarke *v.* Jamson, 1 *Ves.* 101; Merrill *v.* Frame, 4 *Taunt.* 329; *Shep. Touch.* 165; 4 *Cruise Dig. tit.* 32, *Deed, c.* 24, *sect.* 22, and *c.* 25, *sect.* 16 and 17; Christien *v.* Whitehill, 16 *Serg. & Rawle* 114; Frost *v.* Raymond, 2 *Caines' Rep.* 192; Kent *v.* Welch, 7 *Johns.* 258; Vanderkarr *v.* Vanderkarr, 11 *Johns.* 122; Gates *v.* Caldwell, 7 *Mass.* 68; Sumner *v.* Williams, 8 *Mass.* 201.  But it has been said that this rule is not applicable to leases, or conveyances of freehold estates, or those of inheritance; and this distinction would seem to receive some countenance from what is said in 1 *Ship. Touch.* 165, where, after laying down the rule as established in Noke's case, which had reference to a term for years merely, the author says " this is not like to the case where a man doth make a lease for *life* by the words " *dedi et concessi*," or make a lease for

[Weiser v. Weiser.]

*life* by other words *reserving rent:* (in which cases the law doth create a warranty *against all men* during the life of the lessor): for if in these cases there be an *express* warranty in the deed, yet this doth not take away, nor *qualify* the implied warranty: but the lessee may make use of which of these he will, if he be ousted or evicted by one that hath elder title." And Mr Butler in his note (1) to *Co. Lit.* 384, *a*, on this subject, in reference to granting estates of inheritance in lands says, "when they (*lands*) were granted to be *held of the grantor himself,* at least if the grant were made by the word "*dedi,*" then without any other warranty, the feoffor and his heirs were bound to warranty. This is enacted by the statute *de bigamis, c.* 6, and we have Lord Coke's authority that this statute was only declaratory of the common law in this respect. The reason for implying warranty in this case, is, by his lordship, said to be that " where *dedi* is accompanied with a *per durable tenure of the feoffor and his heirs,* there *dedi* importeth a *per durable* warranty for the feoffor and his heirs to the feoffee and his heirs, 2 *Inst.* 275. The warranty in this instance was, therefore, a consequence of *tenure, Co. Lit.* 101, *b,* and so *necessary a consequence of it,* that where an *express* and *qualified* warranty was introduced, it did not *restrain* or *circumscribe* the implied warranty." But in England, as Mr Butler observes in the same note, "The statute *quia emptores terrarum,* put an end to this implied warranty, as incident to granting of lands in fee simple, and excepting in cases of homage ancestral, no warranty unless it arose from the express contract of the parties, bound more than the donor, or bound him longer than the term of his life. But then this statute does not extend to grants for life or in tail made by the owner of the fee simple, who still retains the reversion, for there the grantee holds of him and *tenure* of course exists. But according to the statute *de bigamis,* which seems to be only a confirmation of the common law, as laid down by Bracton, though the deed does contain the words *dedi et concessi tale tenementum,* yet if the land is given to be holden of the chief lords of the fee, or of any other, and not of the feoffor, or his heirs, reserving no service, without homage or without the above mentioned clause, it was declared that the heirs should not be bound to warranty, notwithstanding the feoffor, during his life, should be bound by force of his own gift. 2 *Inst.* 274-5; 2 *Reeve's Hist. Eng. Law* 144; 1 *Reeve's Hist. Eng. Law* 445. The words of Bracton, in relation to this subject, are "*sciendum est quod ad omnes chartas de simplici donatione, competit tenenti warrantizatio et tenentur donatores et eorum hæredes ad warrantiam, &c., nisi forte in charta de feoffamento contrarium exprimitur.*" *Lib. v. fol.* 388-9. And are rendered by Mr Reeve thus: "In all charters *de simplici donatione,* the tenant was entitled to a warranty from the donor and his heirs, unless some clause was inserted, specially declaring that the donor, or his heirs, should not be bound to warranty or to make an *excambium.*" 1 *Reeve's Hist. Eng.*

*Law* 445.   Let the law, however, be as it may, in regard to the practicability of restraining or circumscribing an implied warranty, which is the necessary consequence of *tenure*, and, therefore, to be considered as ever incident to it, it is in no wise applicable to the case of coparceners, after partition made between them, more than before, for they do not hold of each other.  They are still in by descent from the common ancestor.   See 1 *Inst.* 173, *a*, where Lord Coke says, " the partition is in truth *less than a grant*, for it maketh no degree, but each coparcener is in, by descent, from the common ancestor."   The parties, therefore, to a partition, whether they be coparceners, joint-tenants, or tenants in common, are at full liberty to regulate and limit the extent of their future liability to each other, in regard to it, as they please, by the introduction of express clauses or covenants for that purpose, into the deed of partition, *conventio et modus vincunt legem*.   This may be advisable, too, for the greater security, even in cases where the law will create a warranty; for Lord Coke says, " there is a diversity between a warranty that is a covenant real, which bindeth the party to yield lands or tenements in recompense, and a covenant annexed to the land, which is to yield but damages; for that a covenant is in many cases extended further than the warranty.  As, for example, it hath been adjudged, that where two coparceners made partition of land, and the one made a covenant with the other to acquit her and her heirs of a suit that issued out of the land, the covenantee aliened. In that case the assignee shall have an action of covenant, and yet he was a stranger to the covenant, because the acquittal did run with the land."

Judgment affirmed.