Rountree vs. Denson and another.

---

ROUNTREE vs. DENSON and another.

*January 29 — February 19, 1884.*

*(1) Power of attorney: general words. (2) Ejectment by mortgagee under deed absolute in form. (3) Mutual deeds of partition construed together. (4) Estoppel by covenants therein.*

1. Where a power of attorney is given for a particular purpose, general words therein are not to be construed at large, but merely as giving general powers for carrying into effect the special purpose for which the power is given.

2. *It would seem* that the grantee in a deed which, though absolute on its face, is in fact a mortgage, if he has never been in possession of the premises, cannot maintain ejectment therefor.

3. Mutual deeds of partition must be taken and construed together as one instrument in the light of all the surrounding circumstances to which they obviously and directly point.

4. A tenant in common, who, after conveying his interest to a third person, makes partition with his cotenant, as though he still retained such interest, by the execution of mutual conveyances with covenants of warranty, is estopped to set up against such cotenant a title to the part conveyed to him acquired by a subsequent reconveyance from such third person. The title acquired by such reconveyance enures to the benefit of the cotenant.

APPEAL from the Circuit Court for *Grant* County.

The case is thus stated by Mr. Justice CASSODAY:

"This is an action of ejectment to recover twenty acres of land, to wit, the W. $\frac{1}{2}$ of the S. W. $\frac{1}{4}$ of the N. W. $\frac{1}{4}$ of section 21, town 3, range 1 west, in Grant county. The defendant *J. McDougal Davidson* claimed title from the

plaintiff, and the other defendant claimed as *J. McDougal Davidson's* tenant.

"It appears from the evidence that the forty acres (including the twenty in question) was entered by the plaintiff May 24, 1847. The plaintiff and wife conveyed to one William Davidson the undivided one-half of that forty, including the twenty acres in question, July 29, 1848, by warranty deed, and William thereupon went into possession. June 1, 1863, *J. McDougal Davidson* obtained a deed from Grant county of the undivided one-half of the forty (including the twenty acres in question), and another forty, to wit, the N. E. $\frac{1}{4}$ of the S. E. $\frac{1}{4}$ of section 20, in the same town and range, and the deed thereof was about that time recorded.

"August 10, 1866, *J. McDougal Davidson* gave to said William Davidson a power of attorney, whereby he constituted and appointed him his true and lawful attorney for him, and in his name, place, and stead, to accept the service of any process that *John H. Rountree,* or any other person, might seek to serve on him, in order to procure partition of any lands he might own in Wisconsin in common with any other person, or he did so constitute and authorize him to deed and properly convey all the right, title, interest, and claim that he might be possessed of to lands in Grant county, and to manage and control any suit or proceeding in his name, to make any such answer to any such proceeding or suit as in his opinion might be most for his interest, and generally to do any and all things necessary to be done and performed in or about the procuring any such partition, in the same manner and to the same effect as he himself might or could do were he personally present. This was recorded August 22, 1866.

"August 21, 1866, *J. McDougal Davidson,* by William Davidson, his attorney in fact, conveyed to the plaintiff two pieces of land of twenty acres each, which it is claimed they

held in common (not including the twenty in question), and the conveyance was recorded August 22, 1866. August 21, 1866, the plaintiff and wife, by warranty deed, reciting a consideration of $100, conveyed to *J. McDougal Davidson* the S. ½ of the N. E. ¼ of the S. E. ¼ of said section 20, *and also the W. ½ of the S. W. ¼ of the N. W. ¼* of said section 20, intending by such last description, as alleged by *Davidson* and proved and admitted by the plaintiff and found by the court, to convey the corresponding twenty acres in said section 21, that is to say, the twenty acres in question. This deed was recorded August 22, 1866, and recited that it was ' made for the purpose of partitioning and dividing the land therein described according to the facts.'

"February 6, 1869, the plaintiff and William Davidson made and entered into a written agreement, wherein and whereby the plaintiff agreed to get and take in his own name a tax deed, if he could, on each of the twenty-acre pieces of land which he had so conveyed and intended to convey to *J. McDougal Davidson*, including the twenty acres in question, and to pay said William Davidson, at such times as he might find it convenient, in sums of five or ten dollars at a time, as much as $50 per year; and if both parties should agree to it, the sum might be increased to not exceeding $100, as above stated, for the period of not exceeding ten years, *provided* William lived so long, unless the parties consented to an extension, and the said William thereby agreed to favor and facilitate the plaintiff in taking and perfecting tax title deeds to the lands as much as he could, and to protect the timber on the land from waste or damage; and, if in his power, to repay all moneys so advanced and taxes paid, with interest at ten per cent., payable annually; and, upon such payment being made, the plaintiff was to convey such lands to William, or to such person as he might direct.

"November 14, 1873, William Davidson executed and delivered to the plaintiff a quitclaim deed in the usual form, in

Rountree vs. Denson and another.

and by which he purported to convey to the plaintiff the twenty acres of land in question, and the other twenty-acre piece so conveyed to *J. McDougal Davidson* August 21, *1866*; and at the same time the plaintiff executed and delivered to the said William Davidson an agreement in writing, wherein and whereby he agreed to reconvey to the said William the twenty acres of land in question (and the other twenty so conveyed) upon his paying the plaintiff the money he might or should owe him, with ten per cent. interest halfyearly, and due and payable, and if not paid to be counted as principal, and to draw interest at the same rate at the time such payment should be made, including taxes of every kind and nature, provided the payments were all made during William's natural life.

"The answer of *J. McDougal Davidson* alleges the deed to him from Grant county, and also the deed to him from the plaintiff August 21, 1866, and that immediately after the making of this last-mentioned deed he went into possession, and has ever since occupied and possessed in severalty the land in question and the other lands thereby conveyed, and that he had been in the notorious and adverse possession of the land in question under that deed, and held the same and the whole thereof against the plaintiff and all the world for more than ten years next preceding the commencement of this suit, and ever since August 21, 1866, and that the statute of limitation is thereby pleaded in bar of the plaintiff's complaint and his alleged cause of action.

"This action was commenced February 9, 1880. William Davidson in fact lived on the land in question from 1848 to the time of his death, which occurred a short time before the commencement of this action. For several years prior to William Davidson's death he seems to have been dependent very largely upon the plaintiff, who advanced money to and for him from time to time, and such advances amounted to seven or eight hundred dollars or more, and

on account of which, it is claimed, he conveyed the lands in question to the plaintiff.

"The court found, as stated, the entry of the land by the plaintiff; the conveyance by him to William Davidson in 1848, as stated, and of the whole of the land in question, with the mistake as to the section, to *J. McDougal Davidson*, August 21, 1866; the power of attorney; and also that on May 14, 1878, William Davidson, as attorney in fact for *J. McDougal Davidson*, by virtue of the power of attorney, conveyed the lands in question to the plaintiff; that the defendants were in possession and refused to deliver the same to the plaintiff, and that his damages therefor were one dollar. And as conclusions of law the court found that the deed from the plaintiff to *J. McDougal Davidson*, of August 21, 1866, should be reformed according to the facts stated, that the plaintiff was the owner in fee of the land in question and entitled to the immediate possession thereof, and that the same was unlawfully withheld by the defendants to the plaintiff's damage in the sum of one dollar. Judgment was ordered accordingly, with direction that each party pay his own costs."

The defendants appealed from the judgment.

For the appellants there was a brief by *A. W. & W. E. Bell*, and oral argument by *Mr. A. W. Bell*.

For the respondent there was a brief by *Carter & Cleary*, and oral argument by *Mr. Carter*.

CASSODAY, J. The mere fact that the wants of William Davidson were not recognized and supplied by *J. McDougal Davidson*, his relative and the object of his bounty, but were relieved by the plaintiff, is no ground for sustaining an action of ejectment in favor of the latter and against the former. In such an action the plaintiff must recover upon the strength of his own title, and not on the weakness of the defendants' title. *Gardiner v. Tisdale*, 2 Wis., 152.

Rountree vs. Denson and another.

The finding of fact that the lands in question were conveyed to the plaintiff on May 14, 1878, by William Davidson, as attorney in fact for *J. McDougal Davidson*, by virtue of the power of attorney mentioned, seems to have but very little support from the evidence. No such deed seems to have been present in court, much less offered in evidence. The only testimony in support of that finding was a statement made by the plaintiff, while on the stand as a witness, under a direction of the court for him to make a statement of the whole matter. The memory of the witness as to dates and details is not very clear or satisfactory, and it may be that he referred to the deed of November 14, 1873, from William to the plaintiff, offered in evidence. If there was still another deed given in 1878 by him as attorney in fact for *J. McDougal*, it seems to us it would have been offered in evidence by the vigilant and careful attorney for the plaintiff.

For the purposes of this case, however, we shall assume that William went through the form of giving such a deed under the power of attorney in evidence to the plaintiff, in May, 1878, as found; still we are forced to hold that the power of attorney gave him no authority to make such a deed. The manifest purpose of the power of attorney was to give authority " to accept the service of any process " " in order to procure a partition " of the lands mentioned, or " to deed and properly convey " the same, and " to manage and control . . . such proceeding or suits, . . . and generally to do any and all things necessary to be done and performed in or about the procuring any such partition." Such being the manifest object and purpose of the power of attorney, its meaning and the authority under it, was in nowise enlarged by the general expressions and words of ratification and confirmation therein contained. The rule is universal that where " there is a power of attorney to do a particular act followed by general words, these general

words are not to be extended beyond what is necessary for doing that particular act for which the power of attorney is given." This is the language of Lord CAMPBELL in *Perry v. Holl*, 2 De Gex, F. & J., 48. To the same effect are *Esdaile v. La Nauze*, 1 Younge & C., 394; *Attwood v. Munnings*, 7 Barn. & C., 278; and many other cases which might be cited. In the last case it was held by the King's Bench "that the general words in the power of attorney were not to be construed at large, but as giving general powers for the carrying into effect the special purposes for which they were given." These cases are in harmony with the decisions of this court. *Chilton v. Willford*, 2 Wis., 1; *Dodge v. Hopkins*, 14 Wis., 630; *Gee v. Bolton*, 17 Wis., 604. Thus construed, it is apparent that the power given by the instrument was fully exercised and exhausted by the mutual conveyances made in 1866 for the express purpose of such partition. The partition of the lands having thus been made by virtue of the power of attorney, and that being the sole purpose and object of the power, it is evident that any subsequent attempt by the attorney to convey the land for his own private benefit would be wholly unauthorized and necessarily treated as a nullity in ejectment. *Campbell v. Campbell*, 57 Wis., 288; *Meade v. Brothers*, 28 Wis., 689. These things being so, it follows that even if there was a deed given by the attorney in 1878, as found by the court, still it would be unavailing to the plaintiff.

It is urged that *J. McDougal Davidson* got no title to the land in question by virtue of the deed to him from the plaintiff in 1866, for the reason that the plaintiff had, in effect, conveyed the same to William Davidson eighteen years before; and that seven years after the plaintiff's deed to *J. McDougal Davidson*, William Davidson had conveyed the same back to the plaintiff, and hence, that the plaintiff was entitled to recover. To this, it seems to us, there are two, if not three, good answers.

1. The deed from William Davidson to the plaintiff in 1873 was preceded by an agreement between them, whereby the plaintiff agreed to advance money to William from time to time, which was done, and to secure the payment of which William gave to the plaintiff the deed of 1873, and at the same time took back a defeasance in writing signed by the plaintiff. The substance of the transaction seems to have been a mortgage, and, as the plaintiff was never in possession, it would seem to be insufficient to entitle the plaintiff to recover in ejectment.

2. The deed from the plaintiff to *J. McDougal Davidson* in 1866 covered, or rather was intended to cover (as conceded and found by the court), the land in question and another piece of twenty acres, and recited a consideration of $100, and contained covenants of warranty to the effect that the plaintiff and his wife, their heirs, executors, and administrators, would warrant and defend the title to the premises to the said *J. McDougal Davidson*, his heirs and assigns, forever, against the lawful claims of all persons. Prior to that conveyance, a deed had been taken from Grant county to *J. McDougal Davidson*, and the plaintiff had seemingly recognized his undivided one-half interest in the two forties (including the land in question), and accepted from him, by way of partition, a deed to himself of twenty acres in each of the forties, with covenants of warranty. These mutual deeds of partition must be taken and construed together as one instrument in the light of all the surrounding circumstances to which they obviously and directly point. Freeman on Cotenancy, § 406. Upon the evidence in the case, we do not think we would be justified in holding that the deed from the plaintiff to *J. McDougal Davidson* was wholly without consideration. On the contrary, we must hold that it was given upon a good and valuable consideration.

Beyond question the general rule is that a party conveying land by deed containing such covenants is estopped from

setting up against his grantee, or those claiming under him,. any after-acquired title to the same land. Such after-acquired title inures *eo instanti*, by way of estoppel to the use and benefit of his grantee, his heirs and assigns. Herman on Estop., §§ 267, 273. It is claimed, however, that the rule is not applicable in case of the partition of lands held by tenants in common by mutual conveyances containing such covenants,. and *Doane v. Willcutt*, 5 Gray, 328, seems to be relied upon in support of such contention. In that case there was a qualified covenant, in which each party covenanted that the other should forever have and hold the land conveyed, in severalty, free and discharged of all right, title, interest or claim of them (the covenantors), "or of their heirs or assigns, or of any persons claiming from, by, or under them, or any of them," while the outstanding paramount title which was acquired by the plaintiff after he and the defendant had made partition was not derived from himself, as here, but from a third party, and was superior to any title which either party to the suit had ever possessed. *S. C.*, 16 Gray, 368. Such a covenant in such a deed may well be construed as relating to the chain of title through which the parties making partition mutually claim, to the extent covered by the covenant, and not to a different and independent source of title. It would seem that an old statute in the time of Henry VIII. gave to all joint tenants and tenants in common the right to make partition between them by writ in like manner and form as coparceners by the common law had been and were compellable to do, with the proviso that every such tenant and his heirs, after such partition made, should and might have aid of the other such tenant or his heirs to the intent to deraign the warranty paramount, and to recover for the rate, as was used between coparceners after partition made by the order of the common law. Rawle on Cov., 474; *Weiser v. Weiser*, 5 Watts, 279. But the right thus given by statute does not exist in case of a voluntary parti-

tion by mutual conveyances. Rawle on Cov., 476, 477; Freeman on Cotenancy, §§ 409, 410; *Weiser v. Weiser, supra; Rector v. Waugh,* 17 Mo., 13. In case of such voluntary partition by mutual conveyances between such tenants, their right to recompense in case of loss depends solely upon the covenants contained in the deed, and not upon any implied warranty. Rawle on Cov., 477. To this effect is a learned and able opinion in *Weiser v. Weiser, supra.* Here the claim is that the plaintiff, after having parted with his interest in the land in question by deed to William, made partition with *J. McDougal,* and conveyed to him the land the same as though he still had an interest in it, and afterwards got a conveyance back from William, and is now the owner. This claim is in direct conflict with the plaintiff's covenants of warranty contained in his deed, and hence, without citing or attempting any analysis of the numerous cases on the subject, or entering into any discussion, we must hold that the plaintiff is estopped, by the express covenants in his deed, from recovering in this action by showing that since giving the deed containing these covenants he had obtained a reconveyance from the person to whom he had previously conveyed. *Rogers v. Cross,* 3 Pin., 36; *Wiesner v. Zaun,* 39 Wis., 188; *House v. McCormick,* 57 N. Y., 310.

3. Since William Davidson recognized the right of *J. McDougal Davidson* in both forties as early as 1866, we must infer that he occupied the lands as tenant of and in subordination to *J. McDougal's* title, and not adversely to him. This being so, and had there been no mistake in the description of the land in the deed under which *J. McDougal Davidson* had claimed the title since 1866, the ten years' statute of limitation would have been a bar to the plaintiff's recovery. *McMillan v. Wehle,* 55 Wis., 685. Whether the mistake in the description prevented the defendants from claiming title under a written instrument within the mean-

ing of sec. 4211, R. S., it is unnecessary here to determine.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with direction to enter judgment for the defendants.