[Filed April 14, 1891.]

## SAMUEL COULTER *v.* PORTLAND TRUST COMPANY.

POWER OF ATTORNEY — CONSTRUCTION.— When an authority is conferred upon an agent by a formal instrument as by a power of attorney, there are two rules of construction to be carefully attended to: (1) The meaning of the general words in the instrument will be restricted by the context and construed accordingly; (2) the authority will be construed strictly so as to exclude the exercise of any power which is not warranted either by the actual terms used or as a necessary means of executing the authority with effect.

ACTS OF AGENT—DUTY OF ONE DEALING WITH HIM KNOWING HIS REPRESENTATIVE CHARACTER.— Where one person deals with another, knowing that the other is acting under delegated authority, it is his duty to inform himself of the extent of such delegated authority. In such case the principal is bound only to the extent of that authority.

THE WORD SALE DEFINED.— Sale is a word of precise legal import both at law and in equity. It means at all times a contract between parties to give and pass rights of property for money which the buyer pays or promises to pay to the seller for the thing sold.

POWER OF ATTORNEY—PAROL EVIDENCE.— When an agency is created by written instrument, the general rule is that the nature and extent of the authority must be ascertained from the instrument itself and cannot be enlarged by parol evidence of an intention to confer additional powers, because that would contradict or vary the terms of the written instrument.

DEFECTIVE TITLE — NOTICE.— When a party claims title to real property and the deeds through which he claims show an infirmity in such title, he is chargeable with notice of the state of his own title and of every fact appearing in any of the deeds through which he deraigns title.

Multnomah county: E. D. SHATTUCK, Judge.

Plaintiff appeals.   Reversed.

This is an action of ejectment brought to recover certain real property in the city of East Portland. The complaint is in the usual form and contains all the allegations required by the statute. The answer traverses plaintiff's allegations and then alleges title in the defendant.

Upon the trial in the court below the plaintiff introduced the record evidence of his title by mesne conveyances from Elijah B. Davidson and wife, the original donees of the United States, and rested. The last conveyance in his chain of title was a deed of bargain and sale with covenants of general warranty from Howard H. Palmer, dated March 24, 1890. The defendant also claiming title through Howard H. Palmer, offered in evidence a power of attorney from him to his wife R. A. Palmer as follows:

"Know all men by these presents: That I, Howard H. Palmer, of Murray, Idaho, have made, constituted and appointed and by these presents do make, constitute and appoint, R. A. Palmer, in the county of Multnomah, Oregon my true and lawful attorney for me in my name, place and stead, to transact any business whatever in a lawful manner, in connection with or necessary to the buying, selling, transferring or mortgaging real estate, in said county and state, including the signing of all necessary papers in order to transact any such business relating to real estate transaction, also including the sealing and acknowledging the execution of said papers, and the delivery of the same. Giving and granting unto my said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully to all intents and purposes as I might or could do if personally present; with full power of substitution and revocation, hereby ratifying and confirming all that my said attorney or her substitute shall lawfully do or cause to be done by virtue thereof.

"In witness whereof, I hereunto set my hand and seal this seventeenth day of March, A. D., 1887.

"HOWARD H. PALMER. [SEAL.]

"Executed in the presence of

"W. G. JENNE,

"J. V. ALLEN."

Which instrument was acknowledged before W. G. Jenne, notary public for Oregon, March 22, 1887, and recorded at 4:50 P. M., November 23, 1888, on page 443 of book 108, deed records of Multnomah county.

Defendant next offered in evidence the following instrument as executed under the authority conferred by said power of attorney:

"Know all men by these presents: That we, Howard H. Palmer and R. A. Palmer, his wife, in consideration of one dollar, to us paid by W. G. Jenne, and for the further consideration that the said W. G. Jenne hereby assumes the responsibility of providing a suitable and comfortable home for and of properly clothing Nellie Palmer, the daughter of the said Howard H. Palmer and R. A. Palmer, until the said Nellie Palmer (now nearly three years of age) shall reach the age of 18 years, do hereby grant, bargain, sell and convey to said W. G. Jenne, his heirs and assigns forever, the following described parcel of real estate, to wit: (Description of premises in dispute) Containing eleven and one-half (11½) acres, exclusive of a road to run across said tract north and south and to be thirty (30) feet wide. Together with the tenements * * * and also all our estate * * * therein or thereto, including dower and the right of dower. To have and to hold the same to the said W. G. Jenne, his heirs and assigns forever. And we, Howard H. Palmer and R. A. Palmer, do covenant with the said W. G. Jenne and his legal representatives forever, that the said real estate is free from all encumbrances, save and except one mortgage for six hundred dollars and interest thereon in favor of the Solicitor's Company, and recorded in the records of said county and state, and that we will and our heirs, executors and admin-

istrators shall warrant and defend the same to the said W. G. Jenne, his heirs and assigns forever, against the lawful claims and demands of all persons whomsoever, except as above specified.

"In witness whereof, we have hereunto set our hands and seals this 22d day of November, A. D., 1888.

"HOWARD H. PALMER. [SEAL.]
"By R. A. PALMER,
    "His attorney in fact.
"R. A. PALMER."        [SEAL.]

"Signed, sealed and delivered in the presence of
"W. H. NORMAN.
"J. C. McGREN."

Which instrument was acknowledged by R. A. Palmer, both as wife and attorney in fact of Howard H. Palmer, November 22, 1888, and recorded next day at 4:50 o'clock P. M., book 110 of deeds, on page 44.

Plaintiff objected to the admission of deed in evidence as unauthorized by said power of attorney and void on its face. It was conceded at the trial that defendant had succeeded to whatever title passed to W. G. Jenne by this deed; and they offered no other documentary evidence. But the defendant offered oral testimony to prove certain alleged facts, which they claimed would affect the operation of this power of attorney and deed in respect of their passing the title in said premises from Palmer to Jenne. The plaintiff objected to such testimony as incompetent and irrelevant, and excepted to its admission by the court. He also excepted to the findings of fact based thereon as unsupported by any competent or sufficient evidence, and as themselves incompetent and irrelevant. The findings of the court are as follows:

1. That the first of said actions is brought to recover possession of the following described tract of land: [Here follows a description of the property, as set forth in the complaint.]

2. That the parties to said action, plaintiff and defend-

ant, both claim title to the premises in each action involved, by deed from Howard H. Palmer, a former owner thereof.
· 3.   That all said lands were portions of a larger tract, prior to the 29th day of January, 1887, owned by one Susan E. Jenne, who on said day conveyed all said larger tract of land to one William G. Jenne, her son, for the purpose of having the same divided among her children, of whom Rhoda A. Palmer, the wife of said Howard H. Palmer, was one; that at the time of the execution of said conveyance by said Susan E. Jenne, she gave verbal direction to the said William G. Jenne in regard to the apportionment of her said lands among her children, and verbally stated to him that her daughter, Rhoda A. Palmer, should have no portion of said land, but that he should convey to said Howard H. Palmer the share to which his wife, as the child of the said Susan E. Jenne, would otherwise be entitled; that in pursuance of said direction the said William G. Jenne conveyed to the said Howard H. Palmer in fee all the lands in said actions involved, and that said Howard H. Palmer paid no consideration therefor.   This last-mentioned conveyance is the source of title to said lands derived by the said Howard H. Palmer.

4.   That thereafter the said Howard H. Palmer executed to his wife, the said Rhoda A. Palmer, a power of attorney, bearing date March 17, 1887, and acknowledged March 22, 1887, wherein and whereby he empowered the said Rhoda A. Palmer, in his name, place and stead, to "transact any business whatever in a lawful manner in connection with or necessary to the buying, selling, transferring or mortgaging real estate," in Multnomah county, state of Oregon, "including the signing of all necessary papers in order to transact any such business relating to real-estate transactions, also including the sealing and acknowledging the execution of said papers and the delivery of the same;" that said instrument was witnessed and acknowledged so as to entitle it to be recorded, and was on November 23, 1888, duly recorded

in the office of the recorder of conveyances for said Multno-
mah county.

5.    That at some time prior to the 22d day of November,
1888, the said Howard H. Palmer and Rhoda A. Palmer
had executed to the Solicitor's Company a mortgage upon ·
the lands conveyed to the said Howard H. Palmer by the
said William G. Jenne, to secure a loan of $600 made by ·
said company, which money was sent to the said Rhoda A.
Palmer in Idaho by W. G. Jenne.

6.    That on said 22d day of November said Rhoda A.
Palmer, assuming to act as attorney in fact for said Howard
H. Palmer, under said power of attorney, on his behalf and
on her own behalf, executed to the said William G. Jenne a
deed purporting to convey in fee simple all the lands
involved in these three actions, exclusive of a road across
said tract north and south, to be thirty feet wide, upon an
expressed consideration of one dollar, "and for the further
consideration that the said W. G. Jenne hereby assumes the
responsibility of providing a suitable and comfortable home
for and of properly clothing Nellie Palmer, the daughter of
the said Howard H. Palmer and R. A. Palmer, until the
said Nellie Palmer (now nearly three years of age) shall
reach the age of eighteen years;" said conveyance also con-
taining a covenant of general warranty of the title to said
premises, and also a covenant that "said real estate is free
from all incumbrances, save and except one mortgage for
six hundred dollars, and interest thereon, in favor of the
Solicitor's Company"; that said conveyance was duly wit-
nessed and acknowledged so as to entitle it to be recorded,
and it was on the 23d day of November, 1888, duly recorded
in the office of the recorder of conveyances of said Multno-
mah county.

7.    That on the 4th day of February, 1889, said W. G.
Jenne, with his wife, executed a deed purporting to convey
in fee simple the tract of land involved in the first of the
actions above set forth to the defendant the Portland Trust
Company of Oregon, for a consideration of $300 per acre,

and thereafter said company executed to the defendants Rash and Warner deeds purporting to convey in fee simple, as portions of the land to it conveyed, the tracts to which they respectively make claim of title.

8. That at the time of the execution of said several conveyances none of the defendants had any knowledge or notice of matters affecting the title to the lands to each conveyed, except as appeared from the record of conveyances.

9. That from the purchase price of the lands conveyed by the said William G. Jenne to the said Portland Trust Company of Oregon, said company retained the amount due upon the mortgage to the Solicitor's Company above mentioned and therewith satisfied the same.

10. That the sum of one dollar, mentioned in the deed of the 22d day of November, 1888, from the said Howard H. Palmer and Rhoda A. Palmer to the said William G. Jenne, was never paid, but that the said William G. Jenne took charge of the child in said deed mentioned from the date of its execution until the month of March, 1890, when she was taken from his custody upon proceedings in an action of *habeas corpus* instituted by the said Howard H. Palmer against the said Wm. G. Jenne in this court.

11. That the said Rhoda A. Palmer died on or about the 17th day of December, 1888, and that from the date of the execution of the conveyance from William G. Jenne to Howard H. Palmer, above mentioned, to that of the death of the said Rhoda A. Palmer, the said Howard H. Palmer allowed the said Rhoda A. Palmer to control the land to him conveyed as aforesaid, and executed with her such instruments in relation thereto as she desired to have executed, and that the intent of the said Howard H. Palmer in executing said power of attorney was to enable his wife to manage and control the lands above described, in any manner that she might determine.

12. That the said Howard H. Palmer was not within the state of Oregon at the time of the execution of the deed by Rhoda A. Palmer as his attorney in fact to William G.

Jenne, and did not know of the execution of said deed or of any of said transactions connected with or relating to said premises occurring after the execution of said power of attorney and mortgage in March and April, 1887, until July, 1889; and that he never ratified the same.

13.   That on the 24th day March, 1890, the said Howard H. Palmer executed to the plaintiff a deed purporting to convey in fee simple all the lands above described, in consideration of the sum of one hundred dollars paid by the said plaintiff to said Palmer, but that said Palmer still retains an interest in said lands, and that said consideration was a nominal one, and said conveyance was executed solely to vest the title to said lands in the plaintiff.

These findings of fact were followed by conclusions of law in favor of the defendant, upon which judgment was entered from which this appeal was taken.   The other facts appear in the opinion.

*W. W. Thayer*, and *J. F. Watson*, for Appellant.

The intention of Howard H. Palmer must be determined from the power of attorney itself, construed in the light of the facts and circumstances surrounding the transaction; and it is hardly supposable that he, after his mother-in-law had caused the deed to be made to him instead of to his wife, thus evincing an intention that he should have the property and not her, would at once transfer to her the disposition of it for any purpose which might accord with her whims or caprice. · Nor can the court go outside of the plain language of the power to ascertain the intention of the party creating it.   The agent's authority must be determined by the terms of the writing and the nature of the business to be transacted, to be affected by any local usage, trade or custom, relating to such transactions at the place where the authority of the agent was to be exercised, should there be any such usage or custom. (*Pollock* v. *Cohen*, 32 Ohio St. 522.)

An agent's authority, in whichever way delegated, will be limited to that expressly conferred and such implied

authority as is necessarily and ordinarily incident thereto.
(1 Am. & Eng. Enc. Law, 1026.)

The fact that the power of attorney in question was given
by a husband to his wife does not change the rule referred
to. A wife as such has no original or inherent power to
make any contract which is obligatory on her husband. No
such right arises from the marital relation between them.
If, therefore, she possess a power in any case to bind him
by any contract made on his behalf, it must be by virtue of
an authority derived from him and founded on his assent,
although such assent may be precedent or subsequent and
expressed or implied; and this is the light in which contracts
are universally viewed. When such authority is conferred, the
relation between them and the consequences of that relation are
analogous to those in the ordinary case of principal and agent.
(*Benjamin* v. *Benjamin*, 15 Conn. 347, 39 Am. Dec. 386.)

A wife has no authority in law to act for her husband
except for the purpose of realizing her right to support; in
all other cases she must be his agent in fact.

Parties dealing with an agent known to be acting under
an express power, whether the authority conferred be gen-
eral or special, are bound to take notice of the nature and
extent of the authority conferred, and they must be regarded
as dealing with that power before them, and are bound at
their peril to notice the limitations thereto prescribed, either
by its own terms or by construction of law. So where the
act assumed to be done by the agent is one for which the
authority is required by law to be conferred by a written
instrument or by a writing under seal, the parties dealing
with him must take notice of that fact, and they will be
bound by any limitations or restrictions contained therein,
although they have not had actual knowledge of them.
(Mechem on Ag. § 273.)

The rule is well settled that a power to sell property does
not authorize the agent to sell in payment of his own debt.
(1 Am. & Eng. Enc. of Law, 360; *Frink* v. *Roe*, 70 Cal. 296.)

Sale is a word of precise legal import both at law and in

equity. It means at all times a contract between parties to give and pass rights of property for money which the buyer pays or promises to pay to the seller for the thing bought and sold. (*Williamson* v. *Berry*, 8 How. 544; *Mora* v. *Murphy*, 83 Cal. 12.)

In construing the power of attorney, the general expressions in it should be limited to the clear and obvious intent and object of the agency therein created. (*Morrill* v. *Code*, 22 How. 81; *Horne* v. *Ingraham*, 125 Ill. 198, 16 N. E. Rep. 872; *Wood* v. *McCain*, 7 Ala. 800, 42 Am. Dec. 612; *Randall* v. *Duff*, 79 Cal. 115; *Gouldy* v. *Metcalf*, 75 Tex. 455, 16 Am. St. Rep. 912; *Mead* v. *Brothers*, 28 Wis. 689.)

*Williams & Wood*, for Respondent.

The intent of the parties to the contract must be ascertained. (*Coffing* v. *Taylor*, 16 Ill. 467; *Maynard* v. *Mercer*, 10 Nev. 33; *Frink* v. *Roe*, 7 Pac. Rep. 481; *Norton* v. *Whitehead*, 84 Cal. 263, 18 Am. St. Rep. 172; *Spofford* v. *Hobbs*, 29 Me. 148, 48 Am. Dec. 521.)

The lands in controversy belonged to Mrs. Palmer. (*Dexter* v. *Billings*, 110 Pa. 135; *Wales* v. *Newbould*, 9 Mich. 63.)

Palmer ought to be bound by the deed of his wife to Jenne. (Ewell's Evans, Ag. 211.)

STRAHAN, C. J.—The first question to which our attention will be directed is the construction to be given the power of attorney executed by Howard H. Palmer to his wife, R. A. Palmer, on the 17th day of March, 1887. By that instru. ment he created R. A. Palmer his true and lawful attorney in fact and empowered her to transact any business what. ever in a lawful manner in connection with or necessary to the buying, selling, transferring or mortgaging real estate in said county and state, including the signing of all necessary papers in order to transact any such business relating to real estate transactions, also including the sealing and acknowledging the execution of said papers and the delivery of the same. In this case, there is no question as to the power to buy or mortgage real estate, because the agent did not assume to act under the power created by

those words. The only question that we need to consider is the extent of the agent's power conferred by the words "selling or transferring." *Gouldy* v. *Metcalf*, 75 Tex. 455, 16 Am. St. Rep. 912, is a recent case on this subject. In that case the attorney was authorized by the power "to buy, sell or exchange property; to receive and receipt for money; to sell and dispose of property; to give bills of sale thereto or to sell and transfer real estate, and to execute deeds thereto, or to do and perform any lawful act in or about or concerning my (the principal's) business as fully and completely as if I were personally present," and the court held that this did not authorize the attorneys to execute an assignment of the principal's property for the benefit of his creditors. In passing upon this question, the court said: "The language used in the grant of general power is certainly very comprehensive, but the established rule of construction limits the authority derived by the general grant of power to the acts authorized by the terms employed in granting the special powers. When an authority is conferred upon an agent by a formal instrument, as by a power of attorney, there are two rules of construction to be carefully attended to: (1) The meaning of the general words in the instrument will be restricted by the context, and construed accordingly. (2) The authority will be construed strictly, so as to exclude the exercise of any power which is not warranted either by the actual terms used, or as a necessary means of executing the authority with effect." (Ewell's Evans, Ag. 204; *Reese* v. *Medlock*, 27 Tex. 120, 84 Am. Dec. 611.)

So in *Holbrook* v. *McCarthy*, 61 Cal. 216, which was a sale of land under a power of attorney, the terms of which were not followed, the court held the act of the agent of no binding force upon the principal. So also in *Morris* v. *Watson*, 15 Minn. 212, the agent had a general power to sell and convey real estate, and assuming to act under such power he mortgaged it, and the court held the act void. So in *First National Bank of Trenton, Mo.* v. *Gay*, 63 Mo. 33, 21 Am. Rep. 430, the agent had authority to use or sign the principal's name for

the purpose of obtaining accommodation at a bank, which of necessity, remarked the court, authorized the execution of a note, and that the law would give effect to such purpose in the usual and ordinary way; but that such power did not authorize the execution of an instrument which was not a commercial note. The only departure claimed was that the agent signed his principal's name to a paper in all respects a promissory note, except it contained a clause for the payment of attorney's fees if placed in an attorney's hands for collection, and the court held that this provision destroyed its character as a promissory note, and that as against the principal it was void. This case would seem to the writer to be an extreme case, but it illustrates to what extent and how jealously courts scrutinize the acts of agents done in excess of their authority. So in *Dozier* v. *Freeman*, 47 Miss. 647, it was held that where one person deals with another knowing that the other is acting under a delegated authority, it is his own folly if he does not inform himself of the extent of the delegated authority. In such case, the principal is bound only to the extent of that authority. And the *Eq. L. Assur. Soc.* v. *Poe*, 53 Md. 28, is to the same effect. So also in *Pollock* v. *Cohen*, 32 Ohio St. 514, it was held where authority to perform a specified act in specified modes is conferred upon an agent by a regularly executed power of attorney, and general words are also used, the general words are limited by and to be construed with reference to the modes specifically named. And an able elementary writer says on this subject: "It results from the rules of interpretation applied to the construction of powers of attorney that where authority is given to perform specific acts, and general terms are also employed, the latter are limited to the particular acts authorized by the power." (Devlin on Deeds, 359.) These principles are declared and illustrated by other cases. (*North River Bank* v. *Aymar*, 3 Hill, 262; *Wanless* v. *McCandless*, 38 Iowa, 20; *Tappan* v. *Morseman*, 18 Iowa, 499; *Towle* v. *Leavitt*, 23 N. H. 360, 55 Am. Dec. 195; *Rossiter* v. *Rossiter*, 8 Wend. 495, 24 Am. Dec. 62; *Billings* v.

*Morrow,* 7 Cal. 171, 68 Am. Dec. 235; *Rountree* v. *Denson,* 59 Wis. 522; Story on Agency, § 72; Wharton on Agency, § 227.)

The authorities cited conclusively settle in what light a power of attorney is to be viewed and how construed, and it only remains to ascertain in what manner Mrs. Palmer proceeded in the execution of the power conferred upon her. On the 22d day of November, 1888, she proceeded, assuming to act under this power of attorney, to execute to her brother W. G. Jenne a deed in the name of Howard H. Palmer and herself, whereby, for the consideration of one dollar, and "the further consideration that the said W. G. Jenne hereby assumes the responsibility of providing a suitable and comfortable home for, and properly clothing Nellie Palmer, the daughter of said Howard H. Palmer and R. A. Palmer, until the said Nellie Palmer (now nearly three years of age) shall reach the age of eighteen years," did thereby grant, bargain, sell and convey to said W. G. Jenne forever the real estate in controversy. Was this a sale? It is said in *Frink* v. *Roe,* 70 Cal. 296, that an agent authorized to sell and convey the property of his principal cannot as against the principal convey it in trust for the payment of his own debts to one who has notice of the terms of his agency. It was said in *Williamson* v. *Berry,* 8 How. 544: "Sale is a word of precise legal import, both at law and in equity. It means at all times a contract between parties to give and pass rights of property for money which the buyer pays or promises to pay to the seller for the thing bought and sold." And it was said in *Mora, Bishop of Monterey* v. *Murphy,* 83 Cal. 12, "a power to sell and convey is *prima facie* a power to sell for money, usually for cash paid," and it is further said, "to give it any other meaning, it must be by some usage or custom in the country where the power is to to be exercised modifying the *prima facie* significance of the power conferred." So in Benjamin on Sales, § 1, which defines the requisites of a sale, "that it may be defined to be the transfer of the absolute or general property in a thing, for a price in money," and in section 2 it is observed in

considering the price, "that it must be in money paid or promised accordingly as the agreement may be for cash or credit sale; but if any other consideration than money be given, it is not a sale." The principle is announced in *Huthmacher* v. *Harris'* *Admr.* 38 Pa. St. 491, 80 Am. Dec. 502; *Bigley* v. *Risher*, 63 Pa. St. 152; Tiedeman on Sales, § 1. Under no definition of the word "sale" that I have been able to find, or any authority relating to the subject of sales, can this attempted transfer of Palmer's property be called a sale. By this attempted transfer of the land in controversy by Mrs. Palmer to her brother, she sought to make provision for the support of the infant child of herself and husband, and that was all. Whether such a stipulation as the one in the deed to Jenne created an obligation that might be enforced if properly authorized, it is not now necessary to consider or decide. Let it be conceded that it was enforceable against Jenne, had Palmer elected to do so, it was in no sense a sale, but at most only an executory agreement so far as the consideration was concerned. The performance of Jenne's agreement was in no manner secured. He might become insolvent, remove from the state, or simply refuse to care for and support Nellie, leaving Palmer's rights altogether uncertain and precarious.

But it was claimed on the argument here that under the pleadings in this case it was competent to aid this deed and the power under which it was executed in some way by parol evidence, and accordingly a large amount of such evidence was offered. It must be observed that no mistake or imperfection in the writings was put in issue by the pleadings. It is difficult to see on just what ground this parol evidence is offered. There is no latent ambiguity in these writings, and the court can have no difficulty in construing them and determining just what their legal import is. But if it be conceded that parol evidence is admissible when there is no uncertainty in the writings, simply for the purpose of showing the situation of the parties and their relations to each other as well as the property in controversy, it is not

perceived how it could aid the respondent's contention. The fact is undisputed that the mother of Mrs. Palmer once owned this property and deeded it to Palmer, the husband of R. A. Palmer. It likewise fully appears that she said at the time, her daughter R. A. Palmer was not to have it.

This deed to Howard H. Palmer gave him as absolute an estate in this land as if he had purchased it from some person outside of the family and paid full value for it. There is no attempt by the pleadings to assert any equity in Mrs. Palmer at the time her mother made this deed, and if set up it is not perceived on what ground it could be sustained. But this parol evidence was designed in some way to enlarge the powers of the agent beyond what was specified in the writing, and it is believed this cannot properly be permitted. In *Hartford Fire Ins. Co.* v. *Wilcox*, 57 Ill. 180, it was held that it was a general rule that where an agency was conferred by a written instrument, the nature and extent of the authority must be ascertained from the instrument itself, and cannot be enlarged by parol evidence of the usage of other agents in like cases, or of an intention to confer additional powers, because that would be to contradict or vary the terms of the written instrument. The same case states for what purpose and to what extent parol evidence may be resorted to, and it is remarked that the usage of a particular trade or business or of a particular class of agents are properly admissible, not for the purpose of enlarging the powers of the agent employed therein, but for the purpose of interpreting those powers actually given; for the means ordinarily used to execute the authority are included in the power and may be resorted to by all agents and especially commercial agents.

It was argued here that the defendant is a *bona fide* purchaser, and therefore its title could not be disturbed. It is not perceived in the present condition of this record that the question of good faith enters into the case. The very defect complained of constitutes an essential part of the defendant's title, and it must be held to be chargeable with notice of the state of its own title and of every fact appearing in

any of the deeds or writings through which it deraigns title. (Wade on Notice, § 307.)

These conclusions require a reversal of the judgment and that the cause be remanded for a new trial. The same judgment will be entered in *Coulter* v. *Rash* and in *Coulter* v. *Warner*, submitted at the same time. These cases all depend upon identically the same principle, and the same judgment will be entered in each.

[Filed July 8, 1891.]

On petition for rehearing.

STRAHAN, C. J.—Counsel for appellant have filed an application in the nature of a petition for rehearing as to that part of the judgment directing a new trial, on the ground that the findings of fact in the record entitle them to a direction from this court that final judgment be entered in favor of the appellant on the findings of fact. That question is an important one in practice, but it was not made by the appellant upon the argument, nor suggested until after the entry of judgment here. The respondent, therefore, had no convenient opportunity to consider or answer it. No doubt in most cases tried by the court without a jury, where the court errs in its conclusions of law, and the judgment is reversed for that reason, the better practice is for this court to correct the findings of law and direct what judgment shall be entered; but in such case the appellant ought to insist on that mode of procedure at the argument, when the whole question can be considered, and not wait till a new trial is awarded and then suggest the question for the first time.

A new trial can result in no injury to either party, and, under the circumstances of this case, the application for rehearing will be denied.

In the cases of *Coulter* v. *Rash,* and *Coulter* v. *Warner,* the same question is presented, and the like order will be entered.